## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| **BLUERIBBON COALITION, INC., PATRICK MCKAY; and COLORADO OFFROAD TRAIL DEFENDERS,** | **MEMORANDUM DECISION AND ORDER** |
| Plaintiffs, | Case No. 2:23-CV-923-DAK-JCB |
| v. | Judge Dale A. Kimball |
| **U.S. BUREAU OF LAND MANAGEMENT, U.S. DEPARTMENT OF THE INTERIOR,** | Magistrate Judge Jared C. Bennett |
| Defendants. | |
| and | |
| **SOUTHERN UTAH WILDERNESS ALLIANCE,** | |
| Defendants-Intervenor. | |

This matter is before the court on Plaintiffs BlueRibbon Coalition, Inc., Patrick McKay, and Colorado Offroad Trail Defenders' Motion for Relief under 5 U.S.C. § 705, or, Alternatively, for a Preliminary Injunction [ECF No. 4]. On February 21, 2024, the court held a hearing on the motion. At the hearing, Matthew Miller and Nathan Curtisi represented Plaintiffs, Paul A. Turke represented Defendants, and Stephen H.M. Bloch, Hanna C. Larsen, and Laura E. Peterson represented Defendant-Intervenor. The court took the motion under advisement. After carefully considering the parties' memoranda and arguments as well as the facts and law relevant to the pending motion, the court issues the following Memorandum Decision and Order on the pending motion.

1

## BACKGROUND[1]

This case challenges the United States Bureau of Land Management's ("BLM") Travel Management Plan ("TMP") Decision Record ("DR") designating routes for off-highway vehicle ("OHV") use on BLM-managed public lands within the Labyrinth/Gemini Bridges Travel Management Area ("TMA"), which is located northwest of Moab, Utah. Burea of Land Mgmt., *Decision Record: Labyrinth/Gemini Bridges Travel Management Plan*, DOI-BLM-UT-Y010-2020-0097-EA (Sept. 2023). BLM's DR closed 317.2 miles of routes previously available for OHV use and left open 810.5 miles of routes available for some form of OHV travel in the TMA.

Plaintiffs appealed the DR to the Department of the Interior's Board of Land Appeals ("IBLA"). On November 28, 2023, the IBLA denied Plaintiffs' petition to stay, finding that Plaintiffs failed to show the DR would cause them irreparable harm while the appeal was pending. On December 22, 2023, Plaintiffs filed this action and moved for § 705 relief or a preliminary injunction.

The Labyrinth/Gemini Bridges TMA comprises 303,994 acres of public land and is within the BLM Moab Field Office ("MFO") planning area. In 2008, the MFO finalized an RMP that, among other things, designated a travel network consisting of 1,127.7 miles for OHV use within the TMA. The RMP closed 766 miles of OHV routes, but conservation groups challenged the RMP and Travel Plan along with similar decisions in five other BLM travel plans to have

---

1   The court notes that the findings of fact and conclusions of law made by a court in deciding a preliminary injunction motion are not binding at the trial on the merits. *University of Texas v. Camenisch*, 451 U.S. 390, 395 (1981); *City of Chanute v. Williams Natural Gas Co.*, 955 F.2d 641, 649 (10th Cir. 1992), *overruled on other grounds, Systemcare, Inc. v. Wang Labs Corp.,* 117 F.3d 1137 (10th Cir. 1997) (recognizing that "the district court is not bound by its prior factual findings determined in a preliminary injunction hearing.").

additional routes closed. The parties to that action resolved the dispute through a settlement agreement that this court approved, and the Tenth Circuit affirmed. *S. Utah Wilderness All. v. Burke*, 908 F.3d 630, 632-33 (10th Cir. 2018). The settlement agreement provided that BLM would leave the 2008 RMPs and Travel Plans in place and issue new TMPs for specified TMAs throughout the six field offices, including the Labyrinth/Gemini Bridges TMA.

In 2019, BLM initiated the TMP process to catalogue route attributes and resources for each inventoried route in the TMA. The working group then proposed designations for each route across a range of network alternatives. In early 2021, BLM conducted scoping to solicit public input and in September 2022, BLM released a preliminary EA for public review. The EA analyzed four alternatives in detail: (1) Alternative A, the "no action" alternative leaving in place the 1,127.7-mile route network from the 2008 MFO RMP; (2) Alternative B, which prioritizes resource protection and provides for a 690-mile OHV route network; (3) Alternative C, which balances OHV access and resource conflicts and provides for a 960.1-mile OHV route network; and (4) Alternative D, which emphasizes access and provides for a 1,075.2-mile OHV route network.

Motorized recreation is popular in the TMA, particularly on routes used during the annual Easter Jeep Safari event, which has occurred since 1967 and brings tens of thousands of OHV enthusiasts to the area. The TMA is also popular for non-motorized recreation, such as mountain biking, horseback riding, hiking, backpacking, and canyoneering. The portion of the Green River forming the western boundary of the TMA, known as Labyrinth Canyon, is also a popular destination for flatwater float trips by canoe or raft. Under the 2008 RMP, approximately 28 miles of OHV travel routes were located within the 100-year floodplain and directly adjacent to this stretch of the Green River, including "Hey Joe," "the Tubes," "Dead Cow," and "Hell Roaring

Canyon."   BLM received oral and written complaints from boaters concerning noise-induced

conflicts associated with OHV use occurring within the TMA along this section of the Green

River.

BLM's Canyon Country District Manager Nicollee Gaddis-Wyatt signed the DR on

September 28, 2023, designating an OHV travel network that blended several alternative networks

analyzed in the EA. BLM's DR designated a total of 810.5 miles of routes as available for public

OHV use in the TMA, with 98.4 miles designated as OHV-Limited, and the remaining 721.1 miles

designated as OHV-Open. The DR, therefore, designated 317.2 miles of routes as OHV-Closed.

The DR discusses the rationale for every route's designation within the selected travel network.

## DISCUSSION

### Plaintiffs' Motion for § 705 Relief or Preliminary Injunction

Plaintiffs motion asks the court to postpone the effective date of the MFO's September 28,

2023 TMP DR until sixty days after this case is resolved on the merits under Section 705 of the

APA. 5 U.S.C. § 705. Section 705.authorizes courts to "issue all necessary and appropriate process

to postpone the effective date of an agency action or to preserve status or rights pending conclusion

of the review proceedings." *Id.* If the Court is not inclined to provide relief under Section 705,

Plaintiffs ask the court to issue a preliminary injunction, enjoining BLM from enforcing the new

TMP and ordering that the previous 2008 TMP remain in effect.

The four factors courts apply to determine whether to issue a preliminary injunction "also

determine when a court should grant a stay of agency action under Section 705 of the APA."

*Colorado v. United States Env't Prot. Agency*, 989 F.3d 874, 883 (10th Cir. 2021). Preliminary

injunctive relief is appropriate if the moving party establishes: "(1) a likelihood of success on the

merits; (2) a likelihood that the movant will suffer irreparable harm in the absence of preliminary

4

relief; (3) that the balance of equities tips in the movant's favor; and (4) that the injunction is in the public interest." *Roda Drilling Co. v. Siegal*, 552 F.3d 1203, 1208 (10th Cir. 2009). "[T]he final two factors 'merge when the Government is the opposing party.'" *Denver Homeless Out Loud v. Denver*, 32 F.4th 1259, 1278 (10th Cir. 2022). ). Courts consider a preliminary injunction an "extraordinary and drastic remedy." *Warner v. Gross*, 776 F.3d 721, 728 (10th Cir. 2015). Because a preliminary injunction is an extraordinary remedy, a movant must satisfy all four factors and the "right to relief must be clear and unequivocal."  *SCFC LLC, Inc. v. Visa USA, Inc.*, 936 F.2d 1096, 1098 (10th Cir. 1991).

## I.      Likelihood of Success on the Merits

Plaintiffs argue: (1) the DR violates the Appointments Clause of the U.S. Constitution because BLM acted through an employee to create a permanent change to the land and to criminalize behavior; (2) the route closures in the DR violate the John R. Dingell, Jr. Conservation, Management, and Recreation Act ("the Dingell Act") by impermissibly creating a buffer zone around a wilderness area; (3) BLM acted arbitrarily and capriciously when it issued the DR by failing to respond to relevant and significant public comments and by offering explanations that were counter to evidence; and (4) in issuing the DR, BLM violated the National Environmental Policy Act's ("NEPA") requirement to take a "hard look" at how the choices before it affected the environment and failing to conduct an environmental impact statement.

### 1.      Appointments Clause

Plaintiffs argue that the TMP DR the BLM Canyon Country District Manager issued violated the Appointments Clause of the United States Constitution because the District Manager who made the decision to permanently close routes was an employee and not a properly appointed officer. "Under the Constitution '[t]he executive Power' is vested in the President, who has the

responsibility to 'take Care that the Laws be faithfully executed.'" *United States v. Arthrex*, 141 S. Ct. 1970, 1976 (2021) (citing U.S. Const. Art. II, §1, cl. 1; §3). "The Appointments Clause [in Article II of the Constitution] provides that [the President] may be assisted in carrying out that responsibility by officers nominated by him and confirmed by the Senate, as well as by other officers not appointed in that manner but whose work . . . must be directed and supervised by an officer who has been." *Id.* "Today, thousands of officers wield executive power on behalf of the President in the name of the Untied States. That power acquires its legitimacy and accountability to the public through 'a clear and effective chain of command' down from the President, on whom all the people vote." *Id.* at 1979 (quoting *Free Enterprise Fund v. Public Co. Accounting Oversight Bd.*, 561 U.S. 477, 498 (2010).

In *Edmond v. United States*, 520 U.S. 651, 662 (1997), the Supreme Court explained that "[w]hether one is an 'inferior' officer depends on whether he has a superior' other than the President. "An inferior officer must be 'directed and supervised at some level by others who were appointed by Presidential nomination with the advice and consent of the Senate.'" *Arthrex*,. 594 U.S. at 1980 (quoting *Edmonds*, 520 U.S. at 663). Officers hold duties that are "continuing and permanent" and exercise "significant authority pursuant to the laws of the United States." *Lucia v. S.E.C.*, 585 U.S. 237, 245 (2018). The functions of "employees" are described as "lesser responsibilities" that are performed by the "broad swath of lesser functionaries" in the government's workforce who carry out their duties "subject to the control or direction of any other executive" and have duties that are "carefully circumscribed" or "specific in [their] objects." *U.S. ex rel. New v. Rumsfeld*, 350 F. Supp. 2d 80, 98 (D.D.C. 2004).

The parties in this case agree that Nicollee Gaddis-Wyatt, BLM's Canyon Country District Manager, who authorized the TMP DR, is an employee. District Manager Gaddis-Wyatt decided

which routes to keep open and which to close under the controlling RMP. Plaintiffs argue that an employee, who is not accountable to the President, should have no power to exercise the federal government's sovereign authority to close hundreds of miles of previously public routes and create criminal liability for those who trespass on the closed routes. Plaintiffs contend that the power exercised by the District Manager is the type of authority that must be vested in an officer of the United States.

However, the District Manager's OHV route designations reflected in the DR involve a high degree of "control or direction" by other executives. The BLM Canyon Country District Manager reports to three officials in her direct chain of command within the BLM: the Associate State Director for BLM Utah; the State Director for BLM Utah; and the BLM's Deputy Director for Operations. In turn, these BLM officials report to the Director of the BLM, who reports to the Assistant Secretary for Land and Minerals Management, who reports to the Deputy Secretary, who reports to the Secretary of the Interior. The Director of the BLM and Department of Interior officials are all appointed by the President and confirmed by the Senate.

The BLM District Manager's implementation-level decisions, such as the OHV route designations, are also appealable under 43 C.F.R. Part 4 to the IBLA—a class of appointed administrative law judges who are considered "officers." This appellate opportunity further ensures political accountability. In this case, Plaintiffs have already sought relief from the IBLA.

The DR that Plaintiffs contend constitutes the exercise of "significant authority" is also a decision that is "carefully circumscribed" and "specific in its objects," and thus appropriate for a nonofficer employee. *U.S. ex rel. New v. Rumsfeld*, 350 F. Supp. 2d 80, 98 (D.D.C. 2004); *Buckley v. Valeo*, 424 U.S. 1, 126 n.162 (1976). When issuing route designation decisions that form a travel management plan, the authority and discretion of BLM District Managers are constrained by

governing regulations and the applicable RMP, and guided by relevant policy, including the

BLM's Travel and Transportation Management Manual 1626.

The broad constraints to and limitations inherent in a District Manager's TMP decision are

initially laid out in the regulations at 42 C.F.R. subpart 8342, which establishes route designation

criteria and procedures as well as the requirement to monitor OHV use and adapt designation

criteria and procedures over time. 43 C.F.R. § 8342.1 requires that route designations minimize

user conflicts and resource impacts stemming from OHV use, and BLM policy directs a District

Manager to ensure the route designations are "tied" to the objectives and "land use planning

decisions" made in respective RMPs, including the RMP's OHV area designations that the

individual route designations implement. Additionally, the RMPs are subject to multi-layered

regulatory review and approval as prescribed by 43 C.F.R. Part 1600.

The BLM Canyon Country District Manager's decisional authority in developing the TMP

and its individual route designations was "carefully circumscribed" by the 2008 MFO RMP,

including its OHV area designations. The Labyrinth/Gemini Bridges TMP were explicitly made in

conformance with the land use planning decisions and goals of the RMP and does not alter any

OHV area designations in the 2008 RMP. In addition, TMP route designation is inherently

"specific in its object" as it is "one of several decisions required to govern travel and transportation

comprehensively" in the TTM process. As an implementation-level decision, "any limitation

applied in an OHV limited area may change . . . based on resource concerns, changes in resource

uses, and new information." BLM TTM Manual 1626 at 4-2, 7-3.

Moreover, while violations of route designations by OHVs may be subject to fines or other

penalties, these are not penalties, despite what Plaintiffs imply, that the BLM District Manager has

the power to create or prosecute herself.

Therefore, the District Manager's issuance of the DR making OHV route designations does not, under governing precedent, amount to the exercise of significant authority or discretion such that it must be performed by an appointed officer. Rather, OHV route designations are permissibly and customarily made by a non-officer employee because they reflect routine decision-making with limited discretion, subject to the direction of pre-existing management policies and decisions, under the control of multiple officials in the chain of command, and subject to appeal to the IBLA. At this stage of the litigation, therefore, the court finds that Plaintiffs' Appointment Clause claim does not have a likelihood of success on the merits.

### 2.  Dingell Act

Among other things, the John R. Dingell, Jr. Conservation, Management, and Recreation Act, Pub. L. 116-9, 133 Stat. 580 (2019) ("Dingell Act") designated certain lands within Emery County on the western side of the Green River as the Labyrinth Canyon Wilderness. The wilderness area is across the Green River from a large portion of the TMA's western border. The Dingell Act provides that these lands shall be managed in accordance with the Wilderness Act. But Congress also stated that it "does not intend for the designation of the wilderness areas to create protective perimeters or buffer zones." *Id.* § 1232(e)(1). Also, "the fact that nonwilderness activities or uses can be seen or heard from areas within a wilderness area shall not preclude the conduct of those activities outside the wilderness area." *Id.* § 1232(e)(2). Plaintiffs contend that BLM's DR violates the Dingell Act because BLM closed routes to create a "buffer zone" around the Labyrinth Canyon Wilderness area and to reduce noise and visual conflicts within the wilderness area.

The parties dispute whether the DR created a protective buffer zone. Plaintiffs argue that the DR closes most of the routes along the Green River, leaving open only maintained County B

roads on the southwestern most corner of the TMA. BLM, however, asserts that contrary to Plaintiffs' view, the language in the Dingell Act does not enshrine continuing motorized travel on every route leading up to the wilderness boundary. Rather, such language "prohibits use restrictions on nonwilderness areas based solely on the potential impact that use might have on the Wilderness." *Nw. Motorcycle Ass'n v. U.D. Dep't of Agric.*, 18 F.3d 1468, 1480 (9th Cir. 1994). Impacts of motorized travel, even within the adjacent wilderness, "can be considered when allocating uses of adjoining nonwilderness area, so long as it is not the only reason." *Id.* at 1481.

The record before the court shows that multiple "overlook" routes above Labyrinth Canyon remain open for OHV use. These are all routes where Plaintiffs or other vehicle advocates advised BLM it could not form "buffer zones" on the other side of the river while other commenters thought the route should be closed because it "creates user conflicts via noise in Labyrinth Canyon" and is "reclaiming" to a natural state. BLM left Route D1509 open to OHV use because "it leads to a viewpoint overlooking Labyrinth Canyon as well as accessing several dispersed campsites" and "is the only one of the three overlook spurs that is officially considered part of the Jeep Safari Trail System."   Conversely, BLM closed other overlook routes that received similar comments for and against OHV use. BLM indicated it made these closures to minimize impacts to desert bighorn sheep and to minimize route proliferation, noting that OHV "viewpoint" access remains via D1509. This record not only rebuts the factual assertion that BLM created a "buffer zone" eliminating motorized travel across the Green River from the designated wilderness, but also reflects BLM's reasoned application of the regulatory criteria at 43 C.F.R. § 8342.1 in making route designations.

For routes near the Green River, Plaintiff claims that BLM closed them because of noise conflicts with the adjoining wilderness area.   But the DR gives several rationales for closing the

routes. For example, the Hey Joe route, providing access to the Green River at the mouth of Hey Joe Canyon, and Dead Cow Loop, a motorcycle trail paralleling the river that riders contend "provides a valuable recreation experience with unique features that often contain water" are designated OHV-closed. For Hey Joe, BLM explained the closure will minimize "impacts to wetlands and riparian habitats," "Impacts to wildlife habitat" for wild sheep and migratory birds, and "the potential for conflicts between ORV users and dispersed, non-motorized/non-mechanized forms of recreation." Similarly, BLM explained the designation for Dead Cow is intended to minimize "visual and noise-induced conflicts between motorized and non-motorized users" and to minimize "potential for soil erosion, including soil erosion into the Green River." Again, these designations are based on both physical resource impacts and user conflict within the TMA, not the wilderness area. The DR does not rely on or cite to visual or noise impacts to wilderness as the reason it closed routes.

Nothing in the Dingell Act prohibits BLM from complying with the minimization criteria set forth in 43 C.F.R. §8342.1. There is no conflict between the Dingell Act and the minimization criteria. In its closure rationales, BLM was required to analyze OHV impacts within the TMA. BLM cites to impacted cultural sites, damaged riparian resources, and fragmented and degraded wildlife habitat. Some routes also facilitated unauthorized OHV use up and down the bank of the Green River. BLM identified that OHV impacts to riparian wetlands and hydrological resources in these areas have become "major." BLM also noted that the closure of some routes will minimize soil erosion, retain and restore soil and vegetative cover, and reduce potential for sediment transport into the Green River. The DR states numerous reasons for closing routes that are close to the Green River. Although Plaintiffs contend that these detailed rationales are pretextual, there is nothing to suggest that BLM was doing anything other than applying the appropriate criteria in its

decisions. Because BLM made reasoned route-by-route designations under the regulatory criteria that were divorced from the route's proximity to the Labyrinth Canyon Wilderness, the court concludes that Plaintiffs have not established a likelihood of success on the merits of their claim that BLM improperly created a "buffer" for the wilderness area along the eastern side of the Green River.

With respect to the consideration of noise impacts in the Labyrinth Canyon Wilderness area, neither the EA nor the DR contain any discussion whatsoever about user experiences, or any other impact, within the wilderness. Instead, BLM's analysis addressed impacts along the Green River corridor that is located within the TMA. There is nothing in the DR that suggest BLM was letting the nearby wilderness area impact its decisions in the TMA. Because neither the law nor the record supports Plaintiffs arguments that BLM was creating a buffer zone or closing routes due to noise within the Labyrinth Canyon Wilderness, the court finds that Plaintiffs have not met their burden of showing that their Dingell Act claim is likely to succeed on the merits.

### 3. Support for Route Designations

Plaintiffs argue that BLM's route designations were arbitrary and capricious under the Federal Land Policy and Management Act ("FLPMA") because BLM failed to consider important aspects of the TMP and offered explanations that run counter to the evidence. An agency decision is arbitrary and capricious under the APA where the agency "relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or if the agency action is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *W. Watersheds Proj. v. Haaland*, 69 F.4th 689, 700 (10th Cir. 2023).

Additionally, "failure to respond to relevant and significant public comments generally 'demonstrates that the agency's decision was not based on a consideration of the relevant factors.'" *N.M. Health Connections v. United States HHS*, 340 F. Supp. 3d 1112, 1167 (D.N.M. 2018).

Plaintiffs allege that the TMP contains factual errors and unresponsive answers to comments. For example, Plaintiffs state that Route Number D1515A and for Route D1520A had multiple commenters noting the routes offer scenic views that will otherwise be unavailable to elderly and disabled users. The BLM response acknowledges the route is used for "scenic driving," but makes no mention of access for the elderly or disabled. The TMP closed the route with the rationale that it "will enhance desert bighorn sheep lambing and migratory bird habitats by reducing motorized use and removing the route footprint."

Although President Biden may have issued an executive order regarding the protection of access for disabled persons, there is no case law supporting Plaintiffs' contention that it would override BLM's need to assess all relevant criteria for individual routes. This court has previously upheld the agency's authority to make route-by-route vehicle route designations, even when those designations might limit the ability of disabled individuals (or anyone else) to use an OHV to reach a particular location. *Williams v. Bankert*, No. 2:05-cv-503-DAK, 2007 U.S. Dist. LEXIS 77503, *31-34 (D. Utah Oct. 18, 2007) (Under the Rehabilitation Act "there is no requirement that a disabled person have access to every trail that an able-bodied person can access"). In this case, BLM designated the identified routes as OHV-Closed to minimize impacts to wildlife, soils, and vegetation. BLM asserts that other nearby routes designated OHV-Open offer similar scenic views of the Green River and feature an overlook of Labyrinth Canyon. Therefore, individuals relying on OHV use to access these scenic views can still access them and there is no evidence that BLM disregarded OHV use in its decision making.

Plaintiffs also argue that the TMP is arbitrary and capricious because it fails to account for the Dingell Act's prohibition on buffer zones. However, the court has already rejected that contention above. In addition, Plaintiffs contend that BLM failed to respond to comments about this issue. But that argument ignores BLM's response. BLM provided detailed route-by-route responses to comments.

Plaintiffs further argue that the TMP's reliance on conflicts based on "noise" was arbitrary and capricious. BLM justified over 14 miles of closures to minimize known conflicts between OHV and non-motorized users because of vehicle-based noise. Plaintiffs contend that minimizing known conflicts between OHV and river users must be based on some standard or meaningful measure identifying acceptable and unacceptable noise.

In *SUWA v. U.S. Dep't of Interior*, No. 2:13-cv-1060-EJF, 2016 U.S. Dist. LEXIS 140624, at *23-24 (D. Utah Oct. 3, 2016), relied on by Plaintiffs, the court did not rule for plaintiffs on the grounds that BLM failed to follow any scientific protocol for assessing noise impacts because "disagreement among experts or in the methodologies employed is generally not sufficient to invalidate an EA." *Id.* at *22.  Instead, the court held "BLM committed reversible error by failing to provide any analysis of noise impacts on Green River recreation." *Id.* at *23.

BLM's approach to evaluating user conflicts is well recognized in the motorized travel planning context.   A land management agency is justified in relying upon user comments to evaluate user conflict in making OHV route designations. *Silverton Snowmobile Club v. U.S. Forest Serv.*, No. 02-RB-325, 2004 U.S. Dist. LEXIS 30844, *10 n.3 (D. Colo. Nov. 1, 2004) *aff'd* 433 F.3d 772 (10th Cir. 2006) (rejecting argument that findings of user conflict based on comments "are not objectively quantifiable").   This is exactly what BLM did here.   Contrary to Plaintiffs' suggestion, BLM is not required to use any particular scientific protocol for evaluating

user conflict.

BLM also failed to respond to Plaintiff McKay's comment that its map has D2763B and DC3 in the incorrect places. Plaintiff states that the real route is farther from the river than BLM mapped it. BLM responded that Plaintiffs' reference to the two routes that "contradict BLM's own documents" is correct. And Route D1503B was inadvertently listed as closed at one place in the decision, but it is in fact open. Plaintiffs could tell from the description of the route, however, that it was intended to be open and the closed designation was an error. Similarly, Route D1879 is in fact .54 miles long rather than .05 miles. But these are minor errors that cause Plaintiffs no prejudice. In APA litigation "there is a harmless error rule" and "it would be senseless to vacate and remand for reconsideration" the entire TMP on this basis. *PDK Lab'ys Inc. v. DEA*, 362 F.3d 786, 799 (D.C. Cir. 2004).

Finally, Plaintiffs argue that it was arbitrary and capricious for BLM to restrict OHV access based on impacts to bighorn sheep. Plaintiffs identify no legal authority supporting this contention. Plaintiffs' argument also has no support in the TMP record. BLM presents a reasoned analysis based largely on the research and findings of subject matter experts from academic institutions, non-governmental organizations dedicated to wild sheep conservation, and the Utah Division of Wildlife Resources. The vital habitats for this herd mostly include canyon systems overlapping with Plaintiffs' disputed route closures, and the herd population is estimated at 223, below the population objective of 300. BLM's analysis focuses on "human disturbance" from motorized and non-motorized activities and logically observes that any human disturbance can increase sheep travel time, decrease feeding/resting time, cause indirect habitat loss and impair forage availability. These impacts "can escalate seasonally during sensitive birthing, rearing, and breeding seasons" in relation to miles of routes designated as OHV-Open, OHV-Limited, and

OHV-Closed in areas of wildlife habitats. Therefore, BLM adequately explains why it chose to restrict OHV access to certain routes in wild sheep habitats.

Moreover, nearly all the routes closed to minimize impacts to sheep also include minimization of impacts to other resources such as soils, vegetation, and other wildlife species. Even if BLM could not close routes to minimize impacts to bighorn sheep habitat, its decisions are justified on other minimization concerns.

In reply, Plaintiffs raised more issues with routes than were identified in their opening motion. Plaintiff makes several arguments regarding routes that do not appear to have been raised with BLM during the comment period. In addition, the arguments fail to acknowledge that BLM made its decisions based on competing interests. While Plaintiffs discount every other competing interest, BLM does not have that mandate. It weighs all competing interest and sometimes OHV use on a given trail cannot be the priority in its land management decisions. The TMA has an abundance of routes and a significant majority of them remain open under the DR. From the record before the court BLM did a thorough review of the routes in the TMA and made reasonable determinations about whether to allow or discontinue existing OHV travel. Plaintiffs' mere disagreement with some of these individual route determinations fails to show any BLM action that meets the arbitrary and capricious standard.

### 4. NEPA "Hard Look"

Plaintiffs argue that BLM's DR failed to take a sufficiently "hard look" as required by NEPA. "[B]y requiring agencies to take a hard look at how the choices before them affect the environment, and then to place their data and conclusions before the public, NEPA relies upon the democratic process to ensure . . . that the most intelligent, optimally beneficial decision will ultimately be made." *Or. Natural Desert Ass'n v. BLM*, 625 F.3d 1092, 1099 (9th Cir. 2010).

16

"General statements" are not enough to satisfy the hard look requirement. *W. Watersheds Project v. Kraayenbrink*, 632 F.3d 472, 491 (9th Cir.2011).

Plaintiffs' arguments that BLM did not take a hard look under NEPA largely reiterates Plaintiffs' claims already addressed above. Plaintiffs first argue that BLM invoke a talismanic invocation of noise causing user conflicts as partial justification for closing 15 miles of routes along the Green River. Again, the court does not believe there is legal support for Plaintiffs contention that BLM is required to use "objective criteria" or follow "scientific protocol" in analyzing noise level conflicts. Plaintiffs fail to address the case law that universally validates the approach that BLM took in the TMP in evaluating subjective use conflicts identified in public comments.

Plaintiffs further argue that BLM violated NEPA by failing to choose one of the prescribed alternatives in the EA. There is case law directly on point in the OHV travel planning context rejecting this theory. *Sierra Trail Dogs Motorcycle & Rec. Club v. U.S. Forest Serv.*, 470 F. Supp. 3d 1186, 1192-93 (D. Nev. 2020) (adopted alternative "fell within the spectrum of alternatives discussed" in the NEPA document). BLM considered alternatives that would have designated total motorized routes of 690 miles, 960.1 miles, and 1075 miles. The DR fell between alternatives B and C, designating a total motorized route network of 810.5 miles. BLM's impacts analysis of a range of alternatives surrounding the ultimately selected motorized route network is a typical travel plan outcome.   Plaintiffs have not established that BLM's approach violates NEPA.

Plaintiffs further argue that the EA failed to provide site-specific impact analyses, in violation of 42 U.S.C. § 4332(2)(C) and 40 C.F.R. § 1502.14, because the TMP does not address the impacts of closing motorized travel on routes that have been lawfully used for decades. This argument also lacks legal support while ignoring contrary authority. *Bitterroot Ridge Runners*

17

*Snowmobile Club v. U.S. Forest. Serv.*, 329 F. Supp. 3d 1191, 1201 (D. Mont. 2018) (rejecting "blanket statement" asserting lack of site-specific analysis and concluding agency assessed impacts of vehicle use "at a site-specific level to the best of its ability"). Plaintiffs cannot just make a blanket statement asserting a lack of site-specific analysis. Plaintiffs tie their historic use argument to BLM's need to consider the human environment, but that is one of many competing interests BLM considers. The DR contains specific land management rationale for closing each of the routes. Plaintiffs may disagree with the final decisions, but this is not a DR devoid of site-specific analysis.

Plaintiffs also argue that BLM was required to prepare an EIS instead of the EA. There is no support before the court for Plaintiffs' assertion that this was the type of major federal action requiring an EIS. 42 U.S.C. § 4332(C). Plaintiffs argue that BLM wrongly concluded in its FONSI that the TMP does not significantly affect the human environment. BLM's FONSI, relying on the analysis in the EA, provides a resource-by-resource evaluation of short- and long-term effects, including for recreation. The District Manager concluded that "[b]ecause all action alternatives would continue to provide recreation opportunities to a variety of user types . . . significant effects to recreation opportunities would not occur as a result of the action alternatives." This is a factual determination implicating agency expertise that appears to be based on substantial evidence. The court, therefore, does not conclude that the BLM violated NEPA by failing to conduct an EIS.

The court concludes that Plaintiffs have not demonstrated a likelihood of success on the merits of their claims against BLM. Therefore, they have not established that they are entitled to a preliminary injunction.

## II. Irreparable Harm

To establish that they are entitled to a preliminary injunction, Plaintiffs must also show that

18

they will suffer irreparable harm if the court does not issue the preliminary injunction. The threat of injury must be "of such imminence that there is a clear and present need for equitable relief to prevent irreparable harm. *Colo. v. U.S. Env't Prot. Agency*, 989 F.3d 874, 884 (10th Cir. 2021). "[S]peculative or theoretical injury will not suffice" in establishing irreparable harm.   *Id.* Moreover, preliminary injunctive relief is only necessary if the harm is "likely to occur before the district court rules on the merits." *N.M. Dep't of Game & Fish v. U.S. Dep't of Interior*, 854 F.3d 1236, 1250 (10th Cir. 2017)

Here, Plaintiffs claim that they have three distinct types of irreparable harm. First, an ongoing constitutional violation, such as the alleged violation of the Appointments Clause, constitutes irreparable harm. *See Free the Nipple-Fort Collins v. City of Fort Collins*, 916 F.3d 792, 806 (10th Cir. 2019). Second, Plaintiffs claim that BLM is currently in the process of permanently obliterating the trails through route reclamation and, once the trails are gone, they cannot be remade. Third, Plaintiffs argue that Plaintiff McKay will be unable to travel these routes in Spring 2024 as he planned to do and Plaintiffs BlueRibbon and COTD's members will also no longer be able to travel the routes as they have planned to do. Plaintiffs contend that a plaintiff's "expressed desire to visit the area in an undisturbed state is all that is required to sufficiently allege harm." *Alliance for Wild Rockies v. Marten*, 253 F. Supp. 3d 1108, 1111 (D. Mont. 2017). Furthermore, courts have recognized that "when an action is being undertaken in violation of NEPA, there is a presumption that injunctive relief should be granted against continuation of the action until the agency brings itself into compliance." *Reality Income Trust v. Exkerd*, 564 F.2d 447, 456 (D.C. Cir. 1977).

As discussed above, the court disagrees with Plaintiffs assertion that the BLM District Manager's issuance of the DR violated the Constitution's Appointments Clause. Therefore,

Plaintiff's cannot demonstrate irreparable harm based on constitutional injury.

Next, BLM disputes Plaintiffs claim that the closed routes will be imminently obliterated and lost forever. The EA and DR note that routes closed in the TMP "may be decommissioned and reclaimed" through a variety of methods but not setting any timeline. Moreover, route closures are not permanent. Any route, reclaimed or not, can be reestablished in the future, and there remain 810 miles of routes available for continued OHV use, including 91 percent of the Jeep Safari routes. Travel management is a continuing and evolving process. BLM has authority, acknowledged in the TMP, to make different future designations, including authorization of use on new or formerly open routes. Plaintiffs offer nothing more than hypothetical scenarios, which are insufficient to show irreparable injury.

Plaintiffs factual premise that the routes will be obliterated relies solely on the existence of a BLM "toolbox" for implementing route designations. Nowhere have Plaintiffs identified active BLM efforts that have obliterated or will soon obliterate any route. BLM has not taken such action and does not have immediate plans to do so. The EA's implementation Guide, which outlines BLM's anticipated implementation of the TMP as well as strategies and priorities for implementation, breaks down the implementation process into three phases. Phase I includes developing and publishing updated maps and signing the travel network. Phase II states that BLM will take action to reclaim closed travel routes, but they could be as simple as installing barriers. Contrary to Plaintiffs' assertion that BLM will imminently obliterate all 317 miles of OHV-Closed routes, implementation is far more nuanced and typically includes signing and user education and other non-disruptive closure methods. Plaintiff's assertion of imminent harm is speculative and, therefore, insufficient to warrant a preliminary injunction while these proceedings occur.

In addition, Plaintiffs argue that their expressed desire to visit an area with the routes in

their historically open state, which they claim is an "undisturbed state," is sufficient to allege harm. *Alliance for Wild Rockies v. Marten*, 253 F. Supp. 3d 1108, 1111 (D. Mont. 2017). The IBLA decision denying Plaintiffs' failed petition to stay, while not binding on this court, rightly distinguishes the cases Plaintiffs rely on because they involve preservationist plaintiffs seeking to stop activities like timber sales that are "ground-disturbing and by design immediately alter the natural environment upon implementation." Plaintiffs cite to *Martens* fails to include the entire sentence, which actually said the expressed desire to visit an area "in an undisturbed state is all that is required to sufficiently allege harm under ESA." 253 F. Supp. 3d at 1111. ESA refers to the Endangered Species Act. The case is inapplicable to the present case.

Plaintiffs suggest that they will suffer irreparable injury by not being able to ride OHVs on the closed routes in spring 2024 as they had planned. But these individuals may still use hundreds of miles of routes within the TMA. The court agrees with the IBLA that recreationists do not have a legally cognizable interest in using a particular route on a particular date. If the court ultimately determines that Plaintiffs claims have merit, Plaintiffs will be able to resume driving the routes at a later date. Plaintiffs have not demonstrated that their inability to drive on a given route on a given day amounts to irreparable harm.

### III. Balance of Harms/Public Interest

The parties sharply disagree on the balance of harms and public interest. Plaintiffs claim that preliminary injunctive relief is not adverse to the public interest and will cause no meaningful harm to other parties. But BLM received extensive public comments from people near Moab and throughout the State that do not align with Plaintiffs interests. Plaintiffs fail to acknowledge that some members of the public sought greater protection and more route closures. Intervenor Defendant SUWA's members wish to see these areas protected from further riparian damage due

to motorized use and argue that delay in the implementation of the new TMP poses a real threat to riparian areas and wildlife habitats. Plaintiffs' arguments with respect to the balance of harms and public interest fail to grapple with BLM's role in weighing all the interests present in public land management. It is Plaintiffs burden to demonstrate these elements are met and their failure to acknowledge competing interests fails to meet that burden.

Because Plaintiffs have not demonstrated that there is a likelihood of success on the merits of any of their claims, that they will suffer irreparable harm should the relief under Section 705 or preliminary injunction not issue, or that the balance of harms and public interest elements weigh in their favor, the court denies Plaintiff's motion for relief under Section 705 and declines to impose a preliminary injunction.

## CONCLUSION

Based on the above reasoning, Plaintiffs BlueRibbon Coalition, Inc., Patrick McKay, and Colorado Offroad Trail Defenders' Motion for Relief under 5 U.S.C. § 705, or, Alternatively, for a Preliminary Injunction [ECF No. 4] is DENIED.

DATED this 20th day of March 2024.

BY THE COURT:

DALE A. KIMBALL,
UNITED STATES DISTRICT JUDGE