**PROGRAMMATIC AGREEMENT**
**AMONG**
**THE ADVISORY COUNCIL ON HISTORIC PRESERVATION**
**THE BUREAU OF LAND MANAGEMENT - UTAH**
**AND**
**THE UTAH STATE HISTORIC PRESERVATION OFFICE**
**REGARDING NATIONAL HISTORIC PRESERVATION ACT RESPONSIBILITIES**
**FOR TRAVEL AND TRANSPORTATION MANAGEMENT UNDERTAKINGS**

## TABLE OF CONTENTS

WHEREAS CLAUSES – Page 4

STIPULATIONS – Page 8

I.  Professional Standards – Page 8
    A. Agency Official
    B. Agency Archaeologist
    C. Secretary of the Interior's Standards and Guidelines for Archaeological and Historic Preservation
    D. Conformance with Current Laws, Regulations, Policies, and Guidance

II. Terminology Standards – Page 9
    A. Travel and Transportation Management Terminology
        1. Common Terms
        2. Travel Management Area
        3. Route-Based Special Recreation Permit
        4. Concentrate Travel
    B. Cultural Resource Management Terminology
        1. Common Terms
        2. Literature Review
        3. Cultural Resource Potential Map
        4. High, Medium, and Low Potential Cultural Resource Areas
        5. Site Revisit
        6. Class III Survey
        7. Cultural Resource Identification Strategies for Travel Management Plans
        8. Class II Survey

III. Identification Efforts – Page 12
    A. Identification Efforts Prior to Approving Undertakings Covered by this Agreement

1

1. Identifying Areas of Potential Effects (APEs)
    a. APEs for Open, Limited, and Closed OHV Areas
    b. APEs for OHV Route Designations
    c. APEs for Route-Based SRPs
2. Literature Reviews and Cultural Resource Potential Maps for OHV Areas and OHV Route Designations
3. Site Revisits for Open OHV Areas and OHV Route Designations
4. Class III Surveys
    a. Class III Surveys for Open OHV Areas
    b. Class III Surveys for OHV Route Designations
    c. Class III Surveys for the Construction of New Routes
    d. Class III Surveys for Route-Based SRPs
5. Class II Surveys for Open OHV Areas
B. Potential Phased Identification Efforts After Approving Travel Management Plans
    1. Determining the Need for Phased Class II Surveys for Travel Management Plans
        a. Results of Pre-Approval Efforts to Identify Historic Properties
        b. Results of Pre-Approval Efforts to Assess Potential Adverse Effects to Historic Properties
        c. Potential for OHV Route Designations to Concentrate Travel
    2. Completing Cultural Resource Identification Strategies for Travel Management Plans

IV. Findings of Effect – Page 19
    A. No Historic Properties Affected (36 CFR 800.4(d)(1))
    B. No Historic Properties Affected Under the Thresholds of the BLM-Utah's Small-Scale Undertaking Programmatic Agreement
    C. No Adverse Effect (36 CFR 800.5)
    D. Adverse Effects (36 CFR 800.5)
V. Resolutions of Adverse Effects Through Historic Property Treatment Plans (36 CFR 800.6) – Page 20
VI. Exemptions to this Agreement – Page 21
VII. Post Review Discoveries – Page 22
    A. Post-Review Discoveries for Area and Route Designations
    B. Post-Review Discoveries for Route-based SRPs
    C. Inadvertent Discovery of Human Remains
VIII. Additional Efforts to Engage Consulting Parties and the Public – Page 25
    A. Annual Coordination Meeting

       B. Coordination of the Section 106 and NEPA Processes
       C. Public Outreach and Education
          1. Respect and Protect
          2. Ride on Designated Routes, Utah
          3. Project Archaeology
          4. Site Stewardship Program

IX.     Standards for Releasing Sensitive Information – Page 27

X.      Dispute Resolution Procedures in the Implementation of this Agreement – Page 27

XI.     Dispute Resolution Procedures for Undertakings – Page 28

XII.    Disagreement with Finding of No Adverse Effect – Page 28

XIII.   Amendments to the Agreement – Page 29

XIV.   Termination of the Agreement – Page 30

XV.    Agreement Duration – Page 30

XVI.   Anti-Deficiency Act – Page 30

SIGNATURES – Page 31

Appendices

3

## PROGRAMMATIC AGREEMENT
## AMONG
## THE ADVISORY COUNCIL ON HISTORIC PRESERVATION
## THE BUREAU OF LAND MANAGEMENT - UTAH
## AND
## THE UTAH STATE HISTORIC PRESERVATION OFFICE
## REGARDING NATIONAL HISTORIC PRESERVATION ACT RESPONSIBILITIES
## FOR TRAVEL AND TRANSPORTATION MANAGEMENT UNDERTAKINGS

**WHEREAS,** this Programmatic Agreement (Agreement) is made under the authority of Section 106 of the *National Historic Preservation Act* (NHPA, 54 U.S.C. § 306108), and its implementing regulations found at Title 36 Part 800 of the *Code of Federal Regulations* (36 CFR Part 800) – hereafter collectively referred to as "Section 106"; and specifically 36 CFR 800.14(b)(2), which provides the Bureau of Land Management - Utah (BLM-Utah) with the authority to develop a programmatic agreement to govern the Section 106 process for a particular agency program; and

**WHEREAS,** BLM-Utah administers approximately 23 million acres of public lands (public lands) in Utah in accordance with the "multiple use and sustained yield" mission mandated by the *Federal Land Policy and Management Act* (FLPMA) (43 U.S.C. § 1701 et seq.), and these public lands contain tens of thousands of cultural resources. Many of these cultural resources have been listed or determined eligible for listing in the National Register of Historic Places (National Register). These listed and eligible cultural resources (historic properties) possess archaeological, historical, scientific, traditional, and religious values and maintain significant cultural importance to Native American tribes and local, regional, national and international individuals, communities, and organizations. By their very nature, these historic properties are non-renewable and of great worth to the American public; and

**WHEREAS,** public lands in Utah are interlaced with thousands of miles of existing travel routes available for off-highway vehicle (OHV, or "off-road vehicle" as defined in 43 CFR Part 8340) use, in varying degrees of use, condition, and maintenance, many of which provide for public and administrative access needs that support the implementation of the BLM's multiple-use mission. Many of these routes are historic properties. Many of these routes provide access to and across Utah's public lands that support oil and gas development, renewable energy development, mining and mineral development, grazing management, and outdoor recreation opportunities, all of which significantly contribute to Utah's economy. Recreational visitors represent one of the largest users of OHV routes on Utah's public lands, which provided over 7.5 million visitors with access to a wide variety of motorized and non-motorized outdoor recreation opportunities in 2015 and 7.9 million visitors in 2017 ; and

**WHEREAS,** BLM's OHV area and route designation criteria found at 43 CFR Subpart 8342.1 mandates that BLM-Utah's travel and transportation management designations will be based on the protection of resources of the public lands, the promotion of safety of all the users of the

4

public lands, and the minimization of conflicts among various uses of the public lands. The objective of the BLM-Utah's Travel and Transportation Management Program is to balance the protection of public land resources, including historic and archaeological resources, traditional cultural properties, and cultural landscapes, with the need to establish long-term, sustainable, and multi-modal transportation systems composed of designated roads, primitive roads, trails, and areas that recognize valid existing rights and provide public and administrative access for millions of public land visitors and authorized users. The NHPA, FLPMA, 43CFR8342.1, as well as the *National Environmental Policy Act* (NEPA), also mandate that BLM-Utah seek comment and input from the public and federal, tribal, state, and local government agencies when planning for its travel and transportation management activities; and

**WHEREAS,** BLM-Utah recognizes the following travel and transportation management activities as "undertakings" defined at 36 CFR 800.16(y) that have the potential for adverse effects to historic properties, which require conformance with the Section 106 process:

- The designation of open, limited, and closed OHV areas in BLM-Utah field office resource management plans (RMP) and RMP amendments. Within open OHV areas, cross-country OHV travel may occur anywhere across the landscape; within limited OHV areas, OHV travel is allowed subject to limitations, such as limited to designated routes, administrative, seasonal, vehicle size, or other OHV use limitations; and within closed OHV areas, OHV travel is prohibited.
- The designation of routes (including designated off-route parking), for OHV travel within limited OHV areas. The BLM can comprehensively designate routes for a particular planning area within Travel Management Plans, or designate routes on a route-by-route basis as needed. Route designations may involve the following actions:
  o Numbering and signing routes for OHV travel or closure;
  o Identifying routes on publicly-available travel maps;
  o Maintaining routes in manners that may or may not require surface disturbance; and
  o Rehabilitating and barricading closed routes.
- The approval of Special Recreation Permits that authorize OHV-related commercial, competitive, and organized events.

BLM-Utah initiates the 36 CFR Part 800 process for these undertakings at the point it begins land use planning pursuant to its *Resource Management Planning* regulations at 43 CFR Subpart 1610 and/or its *Procedures for Implementation of National Environmental Policy Act* regulations at 36 CFR Part 805; and

**WHEREAS,** the signatories to this Agreement recognize that BLM-Utah's travel and transportation management undertakings, including OHV area and route designations, are intended to provide for protection and management of cultural resources and historic properties (including traditional cultural properties) on the public lands. However, the signatories to this Agreement also recognize that there is a need to establish greater clarity in how BLM-Utah's travel and transportation management undertakings should make "a reasonable and good faith" effort to identify historic and traditional cultural properties in accordance with 36 CFR 800.4(b)(1). This Agreement establishes BLM-Utah's procedures towards comprehensively

meeting its obligations under 36 CFR Part 800 to identify, evaluate, and resolve potential adverse effects to historic properties (including traditional cultural properties) for travel and transportation management undertakings; and

**WHEREAS,** BLM-Utah is the lead federal agency responsible for ensuring that all stipulations, provisions and terms of this Agreement are carried out, and is a signatory to this Agreement; and

**WHEREAS,** BLM-Utah invited the Advisory Council on Historic Preservation (ACHP) to participate in the consultation process for this Agreement in accordance with the *Programmatic Agreement among the BLM, the ACHP, and the National Conference of State Historic Preservation Officers regarding the Manner in which the BLM will meet its Responsibilities under the National Historic Preservation Act* (National PA). The ACHP elected to participate in this Agreement because it presents questions of policy or interpretation and presents issues of concern to Indian tribes. The ACHP is a signatory to this Agreement; and

**WHEREAS,** the Utah State Historic Preservation Office (SHPO) has responsibilities under the NHPA, including 36 CFR Part 800 and the *Procedures for State, Tribal, and Local Government Historic Preservation Programs* regulations at 36 CFR Part 61, to advise and assist BLM-Utah in complying with its Section 106 responsibilities for proposed undertakings on public lands in Utah. The SHPO is a signatory to this Agreement; and

**WHEREAS,** BLM-Utah, the ACHP, and the SHPO maintain the authority to execute, amend, or terminate this Agreement as signatories in accordance with 36 CFR 800.6(c)(1); and

**WHEREAS,** unless otherwise specified, this Agreement collectively refers to Indian tribes, the ACHP, BLM, SHPO, local governments, organizations, and individuals that participated in the development of this Agreement and may participate in future Section 106 undertakings as outlined in this Agreement as "consulting parties;" and

**WHEREAS,** in accordance with 36 CFR 800.6(c)(3), consulting parties that participated in the development of this Agreement were also invited to be a concurring party to this Agreement. A concurring party does not have the authority to amend or terminate the Agreement, nor is their signature required to execute this Agreement; and

**WHEREAS,** BLM-Utah invited the governments of the following federally recognized Indian tribes to participate in the development of this Agreement and be concurring parties: Confederated Tribes of the Goshute Reservation, Eastern Shoshone Tribe, Hopi Tribe, Kaibab Band of Paiute Indians, Kewa Pueblo, Navajo Nation, Northwest Band of the Shoshone Nation, Ohkay Owingeh Pueblo, Paiute Indian Tribe of Utah, Pueblo of Acoma, Pueblo de Cochiti, Pueblo of Isleta, Pueblo of Jemez, Pueblo of Laguna, Pueblo of Nambe, Pueblo of Picuris, Pueblo of Pojoaque, Pueblo of San Felipe, Pueblo of San Ildefondso, Pueblo of Sandia, Pueblo of Santa Clara, Pueblo of Taos, Pueblo of Tesuque, Pueblo of Zia, Pueblo of Zuni, San Juan Southern Paiute Tribe, Skull Valley Band of the Goshute Indians of Utah, Southern Ute Tribe,

Tamaya Pueblo, Ute Indian Tribe, Ute Mountain Ute Tribe, and White Mesa Ute Tribe; and

**WHEREAS,** the Hopi Tribe and the Navajo Nation provided comments to this Agreement; and

**WHEREAS,** BLM-Utah will continue to consult with Indian tribes regarding travel and transportation management undertakings in accordance with 36 CFR 800.2(c)(2)(ii)(A), including providing Indian tribes with meaningful opportunities to identify traditional cultural properties and cultural landscapes that BLM-Utah must consider during future Section 106 processes; and

**WHEREAS,** BLM-Utah invited the following federal and state government agencies to participate in the development of this Agreement and be concurring parties: National Park Service, Utah Department of Transportation, Utah Division of Wildlife Resources, U.S. Army Dugway Proving Ground, Utah Division of Parks and Recreation, Utah Public Lands Policy Coordination Office, Utah School and Institutional Trust Lands Administration; and

**WHEREAS,** three of the above-referenced federal and state government agencies participated in the development of this Agreement and were invited to be concurring parties. These agencies include: the U.S. Army Dugway Proving Ground, Utah School and Institutional Trust Lands Administration, and Utah Public Lands Policy Coordination Office; and

**WHEREAS,** BLM-Utah invited the following local governments to participate in the development of this Agreement and be concurring parties: Beaver County, Box Elder County, Cache County, Carbon County, Daggett County, Davis County, Duchesne County, Emery County, Garfield County, Grand County, Iron County, Juab County, Kane County, Millard County, Piute County, Rich County, San Juan County, Sanpete County, Sevier County, Tooele County, Uintah County, Utah County, Washington County, Wayne County, and Weber County; and

**WHEREAS,** ten of the above-referenced counties in Utah participated in the development of this Agreement and were invited to be concurring parties. These counties include: Beaver County, Duchesne County, Emery County, Iron County, Juab County, Kane County, Piute County, San Juan County, Uintah County, and Washington County; and

**WHEREAS,** BLM-Utah invited the following individuals and organizations to participate in the development of this Agreement and to be concurring parties: American Lands and Access Association, Blue Ribbon Coalition, Colorado Plateau Archaeological Alliance, Friends of Cedar Mesa, Great Old Broads for Wilderness, Milford Archaeological Research Institute, National Off-Highway Vehicle Conservation Council, National Trust for Historic Preservation, Nine Mile Canyon Coalition, Old Spanish Trail Association, Oregon-California Trails Association, San Juan Public Entry and Access Rights, San Juan Heritage Council, Mr. Owen Severance, Ms. Lynell Shalk, Southern Utah Wilderness Alliance, United Four Wheel Drive Associations, Utah Professional Archaeological Council, Utah Rock Art Research Association, Utah Shared Access

Alliance, Utah Statewide Archaeological Society, and Utah 4 Wheel Drive Association; and

**WHEREAS,** nine of the above-referenced organizations participated in the development of this Agreement and were invited to be concurring parties. These organizations include: the American Lands and Access Association, Colorado Plateau Archaeological Alliance, National Trust for Historic Preservation, Nine Mile Canyon Coalition, Old Spanish Trail Association, Southern Utah Wilderness Alliance, United Four Wheel Drive Associations, Utah Rock Art Research Association, and Utah 4 Wheel Drive Association; and

**NOW, THEREFORE,** the signatories and concurring parties agree that travel planning and transportation management undertakings will be implemented in accordance with the following stipulations.

## STIPULATIONS

BLM-Utah will ensure that the following stipulations in this Agreement are carried out:

### I. Professional Standards

#### A. Agency Official

The "agency official" (36 CFR 800.2) for this Agreement is the BLM-Utah State Director (State Director). The State Director will delegate the agency official responsibilities to the appropriate District Manager, Field Manager, Monument Manager, and/or National Conservation Area Manager when implementing the stipulations in this Agreement in accordance with the appropriate manager's respective jurisdiction.

#### B. Agency Archaeologist

BLM-Utah will ensure that all work undertaken to satisfy the stipulations of this Agreement will be conducted or overseen by personnel who meet the qualifications established by the Office of Personnel Management for a GS-0193 professional series archaeologist, hereafter referred to as a "BLM archaeologist." BLM-Utah will continue to authorize BLM-permitted archaeologists to implement the stipulations of this Agreement in accordance with the *Secretary of the Interior's Standards and Guidelines for Archaeology and Historic Preservation*.

#### C. Secretary of the Interior's Standards and Guidelines for Archaeology and Historic Preservation

The *Secretary of the Interior's Standards and Guidelines for Archaeology and Historic Preservation* are not regulations and do not set or interpret agency policy; rather they are intended to provide technical advice about archaeological and historic preservation activities and methods (https://www.nps.gov/history/local-law/arch_stnds_8_2.htm).

BLM-Utah will take into consideration the *Secretary of the Interior's Standards and Guidelines for Identification, Evaluation, Historical and Archaeological Documentation, and Treatment of Historic Properties* when satisfying the stipulations of this Agreement. BLM-Utah will also take into consideration the ACHP's *Section 106 Archaeology Guidance* (http://www.achp.gov/archguide.html) and National Register Bulletin 38: *Guidelines for Evaluating and Documenting Traditional Cultural Properties* when satisfying the stipulations of this Agreement.

### D. Conformance with Current Laws, Regulations, Policies, and Guidance
This Agreement conforms to all applicable federal statutes, regulations, and departmental and agency policies and guidance, as of the Agreement's effective date. Nothing in this Agreement will be construed as limiting BLM's discretion to promulgate new manuals, handbooks, or instruction memoranda consistent with relevant law and guidelines. In the event that changes to applicable federal regulations or guidance affect BLM-Utah's ability to meet the stipulations and/or commitments in this Agreement, BLM-Utah will notify the consulting parties at the earliest available opportunity in accordance with Stipulation XIII of this Agreement.

## II. Terminology Standards

### A. Travel and Transportation Management Terminology

1. **Common Terms**
The terms used in this Agreement, including "open, limited, and closed OHV areas," "routes," "travel management plan," and "Special Recreation Permits," are consistent with the definitions found in the BLM's regulations for the *Designation of Areas and Trails* at 43 CFR Part 8342, regulations for *Special Recreation Permits for Commercial Use, Competitive Events, Organized Groups, and Recreation Use in Special Areas* at 43 CFR Part 2932, the BLM's *Travel and Transportation Management Manual* (BLM Manual Section-1626, "Travel Planning Manual"), and the BLM's *Travel and Transportation Handbook* (BLM Handbook-8342, "Travel Planning Handbook").

2. **Travel Management Area**
For the purposes of this Agreement, a "travel management area" means the planning area for an undertaking that will involve the comprehensive designation of OHV routes within a travel management plan.

3. **Route-Based Special Recreation Permit**
For the purposes of this Agreement, a "route-based Special Recreation Permit" (SRP) authorizes a permit holder to conduct commercial, competitive, or organized group

9

activities, which include motorized access on routes or areas that have been designated for public OHV use or will only be accessible through a route-based SRP. Such route-based SRP undertakings include OHV races and OHV group rides.

4. **Concentrate Travel**

For the purposes of this Agreement, "concentrate travel" refers to a BLM-Utah agency official's determination made in conformance with Stipulations III.A.4.d or III.B.1.c of this Agreement and where there is a reasonable expectation that a proposed designation will shift, concentrate or expand travel into areas where historic properties are likely to be adversely affected within the area of potential effect.

**B. Cultural Resource Management Terminology**

1. **Common Terms**

Unless otherwise noted, the terms used in this Agreement, including "adverse effect," "area of potential effect" (APE), "historic property," and "National Register," are consistent with the definitions found in the regulations related to the *Protection of Historic Properties* at 36 CFR 800.16, regulations for *Determinations of Eligibility for Inclusion in the National Register of Historic Places* at 36 CFR Part 63, the BLM's *Identifying and Evaluating Cultural Resources Manual* (BLM Manual Section-8110), BLM-Utah's *Guidelines for Identifying Historic Properties Handbook* (BLM-Utah Handbook 8110).

2. **Literature Review**

A literature review serves as a component of BLM-Utah's efforts to identify historic properties for travel planning and transportation management undertakings. For the purposes of this Agreement, a "literature review" will include the summarizing and/or listing of the following known resources within the relevant APE: (1) all known cultural resources; (2) all previously conducted Class II and III surveys; (3) all traditional cultural properties and any relevant ethnographic data; and (4) any relevant information about known historic resources. Literature reviews will also include the most recent geographic information system (GIS) dataset from the SHPO containing cultural resource surveys, recorded cultural resource sites, and associated GIS metadata for the APE.

3. **Cultural Resource Potential Map**

A cultural resource potential map supplements a literature review, and serves as a component of BLM-Utah's efforts to identify historic properties for travel planning and transportation management undertakings. For the purposes of this Agreement, a " cultural resource potential map" will identify those public lands within the travel management area that are predicted to have a high, medium, or low potential of having cultural resources. Three types of cultural resource potential maps may be developed: (1) a statistically-based predictive model (predictive model); (2) an

10

expert-informed map; or (3) a predictive model that has been updated with an expert-informed map. When determining which type of cultural resource potential map to develop to supplement the associated literature review, the agency official will consider the quality of the existing GIS data and the availability of individuals to provide professional, tribal, or local knowledge of the planning area.

The development of an expert-informed map requires the direct input of multiple experts, including professional archaeologists, tribal representatives, and consulting parties, such as local historians. In a workshop framework, experts will collaborate and use their collective knowledge and expertise to identify areas with high, medium, or low potential for cultural resources for all public lands within the travel management area. Existing GIS data, cultural resource publications, satellite imagery, and field visits may be used to further refine the potential areas depicted on the expert-informed map.

4. **High, Medium, and Low Potential Cultural Resource Areas**
   For the purposes of this Agreement, "high, medium, and low potential cultural resource areas" refer to those areas identified on the respective BLM-Utah field office's most current cultural resource potential map. These terms do not to refer to land use planning-level allocations made in BLM RMPs or RMP amendments or any type of special designation.

5. **Site Revisit**
   Site revisits serve as a component of BLM-Utah's efforts to identify historic properties for undertakings that would designate open OHV areas and designate OHV routes. For the purposes of this Agreement, a "site revisit" is an on-the-ground exercise and potential site re-documentation completed by a BLM archaeologist or BLM-permitted archaeologist to identify the potential effects of proposed travel and transportation management undertakings to a specific historic property, unevaluated cultural resource site, or known traditional cultural property.

6. **Class III Survey**
   Class III surveys serve as a component of BLM-Utah's efforts to identify historic properties for undertakings in which BLM-Utah may designate open OHV areas and construct new routes, and a potential identification component for undertakings in which BLM-Utah may designate routes for OHV use and approve route-based SRPs. A "Class III survey" is a professionally conducted, intensive pedestrian survey of an entire target area, aimed at locating and recording cultural resources that have surface indications, by walking parallel transects until the area has been intensively surveyed. In consultation with the SHPO, the agency official will make the final determination of the appropriate transect width for Class III survey efforts based on the potential for locating historic properties within the APE. Class III surveys provide BLM-Utah with data regarding the presence or absence of cultural resources across a particular

landscape, including prehistoric and historic trails and roads, as well as specific quantitative and qualitative information regarding identified historic properties (see BLM Manual 8110).

7. **Cultural Resource Identification Strategies for Travel Management Plans**
Cultural Resource Identification Strategies for Travel Management Plans (Identification Strategy) serve as potential components of BLM-Utah's efforts to identify historic properties for undertakings in which BLM-Utah may comprehensively designate OHV routes in a travel management plan. Identification strategies refer to the document identified at Stipulation III.B.2. of this Agreement that will identify each BLM-Utah field office's respective priorities and associated timeframes to complete any additional Class II surveys in a phased manner after the approval of an individual travel management plan. 36 CFR 80036 CFR 800

8. **Class II Survey**
A "Class II survey" is a professionally conducted sample field survey. Class II surveys are on-the-ground pedestrian surveys, but they do not occur across one hundred percent of the target area for a particular undertaking, and/or the survey is completed using alternative field identification methods, which may include walking parallel transects at a greater width than a Class III survey, linear sample surveys along a particular route or routes, or sample survey blocks.

## III.   Identification Efforts

### A. Identification Efforts Prior to Approving Undertakings Covered by this Agreement

#### 1. Identifying Areas of Potential Effects (APEs)

##### a. APEs for Open, Limited, and Closed OHV Areas
For the designation of open and limited OHV areas, the APE is defined as the geographical extent of the areas being proposed for designation as open and limited OHV areas in RMPs and RMP amendments that could potentially affect historic properties. As identified in Stipulation VI of this Agreement, the designation of closed OHV areas is exempt from the Section 106 survey and consultation requirements and the identification of APEs for closed areas is therefore unnecessary.

During the public scoping phase of a RMP or RMP amendment, the agency official will invite and seek consulting party input regarding the undertaking's Section 106 process, including whether to modify the APE for proposed open and limited OHV area designations to account for potential direct, indirect, and/or cumulative effects. After considering all consulting party input, the agency

12

official will make the final determination of the size of the APE for the undertaking in consultation with the SHPO.

b. **APEs for OHV Route Designations**

The APE for routes designated in either a comprehensive travel management plan or on a route-by-route basis will encompass the geographic width of the route bed or current area of disturbance, as well as the geographic width that the governing RMP or RMP amendment provides for off-route OHV travel for parking and dispersed camping purposes. In the event that the governing RMP does not provide for off-route OHV travel for parking and dispersed camping purposes, the APE will be a 15 meter (49.2 feet) corridor from centerline of each route designation. During the NEPA public scoping phase for route designations, the agency official will invite and seek consulting party comments as well as cultural resource site information. The agency official will also take comments on whether to modify the APE for proposed route designations to account for potential direct, indirect, and/or cumulative effects. After considering all consulting party input, the agency official will make the final determination of the size of the APE for the undertaking in consultation with the SHPO.

c. **APEs for Route-Based SRPs**

The APE for proposed route-based SRPs will have the same geographic scope that was delineated for the respective route designation, as well as the geographic scope of any proposed travel, parking, staging, camping, or other uses that would be permitted. The agency official will determine whether inviting and seeking consulting party input into these undertakings' Section 106 processes, including the identification of an APE, is necessary in accordance with the route-based SRP identification standards included in Stipulation III.A.4.d of this Agreement. After considering all consulting party input, the agency official will make the final delineation of the APE for the undertaking in consultation with the SHPO.

2. **Literature Reviews and Cultural Resource Potential Maps for Open OHV Area and OHV Route Designations**

Each BLM-Utah field office will complete and/or update a literature review prior to designating an open OHV area in a RMP or RMP amendment. A literature review is not needed when an RMP or RMP amendment designates a previously open OHV area to a limited or closed OHV area.

Each BLM-Utah field office will complete and/or update a literature review and cultural resource potential map prior to designating routes for OHV use within a particular travel management area through the approval of a travel management plan. BLM-Utah field offices will invite and seek information from consulting parties in the development and updates of their literature reviews and cultural resource potential maps. Consulting parties may provide information, such as the location of unrecorded

13

or partially recorded cultural resource sites, traditional cultural properties, places of religious significance, and input on defining areas of high, medium and low cultural resource potential. Prior to finalizing literature reviews and cultural resource potential maps, or associated updates, BLM-Utah field offices will provide interested consulting parties, including SHPO, with 30 calendar days to review and provide feedback on their respective draft literature reviews and cultural resource potential maps. After the BLM-Utah field office considers consulting party feedback, and appropriate revisions are made, the BLM-Utah field office will provide the SHPO with another 30 calendar days to review and comment on whether the literature review and cultural resource potential map meets the mutually-agreed upon standards in this Agreement. The sharing of sensitive cultural resource data included in the literature review and cultural resource potential maps will conform to the standards in 36 CFR 800.11(c) and Stipulation IX of this Agreement.

3. **Site Revisits for Open OHV Areas and OHV Route Designations**
   BLM-Utah field offices will review all known cultural resource site data within the APE that is included in the literature review, as well as any additional data that may be internally available or available from the SHPO. During this review, the agency official will determine which of the cultural resources should be revisited based on the potential of being affected by the undertaking. The agency official will take into consideration those cultural resources where a road is listed as an impact on the site form.

   In considering a possible site revisit, the agency official will review the source, accuracy and completeness of the data, including information provided by consulting parties.

   Cultural resource site form updates will be completed when any of the following thresholds are met:

   a. When the BLM archaeologist determines that the previous cultural resource site form is insufficient (i.e. missing or insufficient data on features or artifact types);
   b. When notable changes to the site content or structure are identified by the BLM archaeologist;
   c. When the previously recorded site could not be found by the BLM archaeologist or was destroyed;
   d. When the agency official determines that there needs to be a change to the National Register eligibility determination; or
   e. When the previous cultural resource site form was completed over 10 years ago.

   Cultural resource site form updates may be completed on shortened forms. Minimum requirements for a site form update include the site number, county, project name and number, location, and any updated lines of data.

When the site revisit results in the agency official's determination that no adverse effects to historic properties are occurring or may occur from the undertaking, cultural resource site forms and other documentation will be updated as appropriate and incorporated into the Section 106 documentation for the undertaking.

When a site revisit results in the agency official's determination that adverse effects to historic properties are occurring or may occur from the proposed undertaking, BLM-Utah will initiate implementation of Stipulations IV.D and V of this Agreement, which process include inviting and seeking consulting party input.

4.  **Class III Surveys**

     a.  **Class III Surveys for Open OHV Areas**
         Prior to designating an open OHV area, BLM-Utah field offices will complete Class III surveys within all proposed open OHV areas or portions of proposed open OHV areas that are located within a cultural resource potential map's identification of a high potential cultural resource area. The agency official's determination of additional surveys for those portions of the proposed open OHV area that are in medium or low potential areas for cultural resources will be handled through Stipulation III.A.5. Class III surveys will not be conducted for those areas that fall within the exemptions listed in Stipulation VI of this Agreement.

     b.  **Class III Surveys for OHV Route Designations**
         Prior to approving OHV route designations, BLM-Utah field offices will complete Class III surveys within the APEs of all routes or portions of routes that are located within a cultural resource potential map's identification of a high potential cultural resource area. Class III surveys will not be conducted for those routes that fall within the exemptions listed in Stipulation VI of this Agreement.

     c.  **Class III Surveys for the Construction of New Routes**
         BLM-Utah field offices will complete Class III surveys within the APEs for all proposed route construction activities prior to approving the undertaking in all high, medium, and low cultural resource potential areas. Class III surveys will not be conducted for those routes that fall within the exemptions listed in Stipulation VI of this Agreement.

     d.  **Class III Surveys for Route-Based SRPs**
         Before issuing any new route-based SRP, BLM-Utah field offices will complete Class III surveys within the APE or portions of the APE where the agency official has determined that there is a reasonable expectation that authorizing the route-based SRP will result in the shift, concentration, or expansion of travel on the

route beyond its existing use patterns to such an extent that adverse effects to historic properties within the APE are likely to occur. The agency official will consider the following factors when determining whether proposed route-based SRP activities will concentrate travel, regardless of whether the proposed undertaking would occur within a high, medium, or low cultural resource potential area:

    i.  Authorizing the route-based SRP would result in a substantial increase in the amount of OHV riding or other recreational activities, compared to typical visitor use patterns of the proposed routes of use;

    ii.  Authorizing the route-based SRP would provide for new or unique modes of travel on the route, such as OHV races, that may cause route widening and/or new or unique types of ground disturbance; or

    iii.  Other relevant information in regards to travel concentration submitted by the public during the public involvement phases of the undertaking's NEPA process.

Class III surveys will not be conducted for those routes or portions of those routes involved in the route-based SRP that fall within the exemptions listed in Stipulation VI of this Agreement.

5. **Class II Surveys for Open OHV Areas**
   During the Section 106 process for RMPs and RMP amendments proposing to designate open OHV areas, BLM-Utah field offices will invite and seek consulting party input regarding whether Class II surveys are warranted within portions of proposed open OHV areas located within the cultural resource potential map's medium and low potential cultural resource areas. Such Class II surveys would be completed in addition to BLM-Utah's minimum commitments of completing site revisits and Class III surveys within high potential cultural resource areas. After considering all consulting party input, the agency official will, in consultation of the SHPO, make the final determination as to whether such surveys are warranted for the undertaking. Such determinations could include, but are not limited to, completing a certain amount and type of Class II surveys within the APE; completing Class III surveys in one-hundred percent of the APE; or completing no additional Class II surveys within the APE. Class II surveys will not be completed for those areas that fall within the exemptions listed in Stipulation VI of this Agreement.

B. **Potential Phased Identification Efforts After Approving Travel Management Plans**

1. **Determining the Need for Phased Class II Surveys for Travel Management Plans**
   BLM-Utah field offices will invite and seek consulting party input prior to the approval of each travel management plan to inform the agency official's determination of whether any additional phased Class II surveys along designated routes are warranted after the approval of the travel management plan. After

16

considering all consulting party input, the agency official, in consultation with the SHPO, will make the final determination whether any phased Class II surveys along designated routes within the travel management area are warranted. In addition to all consulting party input, the agency official will consider the following criteria when determining whether completing phased Class II surveys along designated routes located within the cultural resource potential map's medium and low potential cultural resource areas is warranted within the travel management area:

a. **Results of Pre-Approval Efforts to Identify Historic Properties**
BLM-Utah's pre-approval efforts to identify cultural resources and historic properties for travel management planning undertakings, including the completion of the literature review, cultural resource potential map, site revisits, and Class III survey information, may result in new and/or updated cultural resource data throughout the travel management area. When determining whether phased Class II surveys are warranted, the agency official will consider how accurately the applicable cultural resource potential map's high, medium, and low potential cultural resource areas identified the likely location of historic properties within the travel management area.

b. **Results of Pre-Approval Efforts to Assess Adverse Effects to Historic Properties**
BLM-Utah's pre-approval efforts to assess potential adverse effects to historic properties for travel management undertakings may result in new information regarding the amount and type of adverse effects to historic properties occurring from existing OHV use patterns on designated routes throughout the travel management area. When determining whether phased Class II surveys are warranted, the agency official will consider the nature and extent of adverse effects occurring to historic properties that were identified throughout the travel management area during the Section 106 process.

c. **Potential for OHV Route Designations to Concentrate Travel**
BLM-Utah travel management plans that comprehensively designate routes for OHV travel have the potential to cause a shift, concentration, or expansion of travel onto other existing routes. If route designation will result in the shift, concentration, or expansion of OHV travel on designated routes beyond their existing use patterns, there may be an increased potential for such OHV travel to cause adverse effects to historic properties. The agency official will consider the following factors when determining whether a travel management plan route designation will "concentrate OHV travel" on designated routes within the applicable cultural resource potential map's medium and low potential cultural resource areas:

17

1. An overall reduction in the number of routes providing OHV access to a particular destination or area;
2. Routes that could be reasonably foreseen to have a substantial increase in OHV travel;
3. Routes that are being or will be promoted as OHV-based tourism destinations by the BLM or an official agency partner;
4. Route designations that would provide for the future approval of route-based SRP activities that would authorize new or unique modes of travel, such as OHV races, jamborees, and historic trail reenactments;
5. Routes that are known to historically receive or are expected to receive a substantial increase of OHV use during a particular timeframe, such as hunting seasons and summer/spring weekends when high numbers of recreationalists, including campers, traditionally visit the public lands; or
6. Route designations that would provide for different types of OHVs using routes that could cause route widening and/or new types of ground disturbance, such as a designation that would allow full-size vehicles on a route that was previously only available to smaller all-terrain vehicles.

## 2. Completing Cultural Resource Identification Strategies for Travel Management Plans

In the event that the agency official determines that phased Class II surveys are warranted after the approval of a travel management plan, the relevant field office will develop a document that identifies the strategy for conducting phased Class II surveys within the associated travel management area. The strategy will include the BLM-Utah field office's prioritized list of Class II surveys that will be completed within the travel management area. At a minimum, the strategy will identify the general areas and/or specific route numbers, and estimated timeframes that phased Class II surveys along designated routes within the travel management area would occur. The strategy will also identify the mileage of designated routes that phased Class II surveys will be completed within:

a. The cultural resource potential map's medium potential cultural resource areas;
b. The cultural resource potential map's low potential cultural resource areas where the agency official has determined that there is a reasonable expectation that a proposed route designation will result in the shift, concentration, or expansion of OHV travel on the route beyond its existing use patterns to such an extent that adverse effects to historic properties may occur within the APE; or
c. Those routes identified by consulting parties and agreed upon by the agency official as having a cultural resource and OHV use conflict.

Phased Class II surveys will not be conducted for those routes that fall within the exemptions listed in Stipulation VI of this Agreement.

18

The agency official will determine the maximum number of miles to be surveyed within moderate and low potential cultural resource areas. Generally speaking, the number of miles to be surveyed in moderate cultural resource potential areas will be less than 25% of the total number of miles surveyed in high potential areas. Furthermore, the number of miles to be surveyed in low potential areas will be less than 10% of the total number of miles surveyed in high potential areas.

Prior to approving a travel management plan, the agency official will seek and invite consulting party input into its phased Class II survey strategy for the travel management area. Consulting parties, including the SHPO, will be provided 30 calendar days to review BLM-Utah field offices' draft phased Class II survey strategies. After considering all consulting party input, the agency official, in consultation with the SHPO, will make the final determination regarding the additional amount, type, locations, and timeframes of phased Class II surveys within the travel management area.

## IV. Findings of Effect

### A. No Historic Properties Affected (36 CFR 800.4(d)(1))

If identification efforts required by this Agreement lead to the agency official's finding that there are either: (1) no historic properties within the APE for the respective undertaking, or (2) historic properties are present within the APE, but the undertaking will have no effect on them based on using the criteria at 36 CFR 800.4(d)(1), the agency official will report these findings to the SHPO. The agency official will provide the SHPO a 30-calendar day review period regarding the agency official's finding. The notification of this finding to consulting parties will be through BLM-Utah's standardized NEPA website, which is accessible to the public at ePlanning.blm.gov.

### B. No Historic Properties Affected Under the Thresholds of the BLM-Utah's Small-Scale Undertaking Programmatic Agreement

Consistent with Stipulation I.B.1. of the Small-Scale Undertaking Programmatic Agreement, officially known as the *Programmatic Agreement between the Advisory Council on Historic Preservation, the Bureau of Land Management - Utah and the Utah State Historic Preservation Office, Regarding National Historic Preservation Act Responsibilities for Small-Scale Undertakings,* BLM will not request the SHPO to review documentation related to BLM-Utah's efforts to identify, evaluate, and assess historic properties and the potential effects of proposed undertakings when both of the following conditions are met:

    a. The entire proposed APE is 50 acres or less in size or less than 5 linear miles; and

    b. A qualified BLM cultural resource professional determines that no historic properties would be affected by the proposed undertaking.

All documentation related to these particular undertakings will follow the Quarterly Reporting Procedures found at Section II.B.2. of the Small-Scale Undertaking Programmatic Agreement Notification of this finding of no historic properties affected to consulting parties will be through BLM-Utah's standardized NEPA website, which is accessible to the public at ePlanning.blm.gov.

C.  **No Adverse Effect (36 CFR 800.5)**

If identification efforts outlined by this Agreement lead to the agency official's finding that the undertaking will have no adverse effect to historic properties based on using 36 CFR 800.5(b), the agency official will provide consulting parties with the relevant cultural resource data (see 36 CFR 800.11(e)) to provide input on the finding of no adverse effect. The notification of a determination of no adverse effect to consulting parties will be through BLM-Utah's standardized NEPA website, which is accessible to the public at ePlanning.blm.gov or through official letters, or meetings.

Pursuant to 36 CFR 800.4(c)(1), the agency official will consult with any Indian tribe that attaches religious and cultural significance to any identified properties within the APE during this same review period. If no comments are received within this time period, the agency official may proceed. After the agency official has received consulting party input and appropriate revisions are made, the agency official will provide the SHPO a 30-calendar day review period regarding BLM-Utah's finding of no adverse effect.

D. **Adverse Effects (36 CFR 800.5)**

If identification efforts outlined by this Agreement lead to the agency official's finding that the undertaking may cause adverse effects to historic properties based on using 36 CFR 800.5(a)(1), the agency official will invite and seek consulting party input regarding BLM-Utah's finding. Consulting parties will be provided with 30 calendar days to review the relevant cultural resource data in accordance with 36 CFR 800.11(c) and Stipulation IX of this Agreement to provide input on the finding. In accordance with 36 CFR 800.4(c)(1) the agency official will consult with any Indian tribe that attaches religious and cultural significance to any identified properties within the APE during this same review period. If no comments are received within this time period, the agency official may proceed. After considering all consulting party input, and appropriate revisions are made, the agency official will provide the SHPO a 30-calendar day review period regarding BLM-Utah's finding of adverse effect..

V.  **Resolution of Adverse Effects Through Historic Property Treatment Plans (36 CFR 800.6)**

The resolution of any adverse effects to historic properties from undertakings encompassed in this Agreement will be accomplished through the development of Historic Properties Treatment Plans (HPTP), and the completion and implementation of HPTPs will evidence BLM-Utah's compliance with the Section 106 process for these undertakings. Through the development of the HPTP, the agency official will identify and consult with consulting

20

parties to develop and evaluate modifications to the undertaking that would avoid, minimize, or mitigate adverse effects to historic properties. Potential treatment options to resolve adverse effects may include, but are not limited to: installing directional and interpretive signs, modifying the boundaries of an OHV area, changing the route location, installing physical barriers, capping or sealing the ground surface, assigning limitations to vehicle type or season of use, designating the route as closed, completing site stabilization measures, conducting historic research, conducting photo documentation, conducting intensive recording, monitoring on a periodic basis, and/or conducting archaeological excavation.

As part of the consultation process, the agency official will provide consulting parties including the SHPO with 30 calendar days to review and provide input on draft HPTPs. The agency official may determine to hold meeting(s) with consulting parties to discuss draft HPTPs before or during this review period. If any consulting party fails to submit written comments to the agency official within the 30-calendar day timeframe, the agency official will assume it has no comments regarding the measures identified in the HPTP. The agency official will revise the HPTP, as needed, to address comments from this consultation process.

After considering all consulting party input, a draft HPTP will be submitted to the SHPO, with a summary of consulting party comments for a 30-calendar day review period to provide the agency official with feedback on the HPTP. The agency official will make the final determination as to whether the HPTP will resolve the adverse effects in consultation with the SHPO.

## VI.     Exemptions to this Agreement

The following travel and transportation management undertakings will be considered exempt from the Section 106 identification and consultation requirements of this Agreement:

A. Designating closed OHV areas in RMPs and RMP amendments, and closing routes to OHV use.

B. The on-the-ground closure of areas and routes using rehabilitation methods, such as scattering brush and moving dead and down wood onto the closed route. Prior to conducting these non-surface disturbing route rehabilitation methods, a BLM archaeologist will conduct a cultural resource training for the field crews. This training will include an introduction of the various cultural resources found in the area and procedures to avoid any potential impacts to these resources. Crews will avoid and report to the BLM archaeologist any cultural resources found.

C. Installing route numbering and designation signs.

D. Designating routes classified as County B Roads as defined by Utah Code 72-3-103(1). These roads: 1) are situated outside of incorporated municipalities, 2) are designated county roads, or 3) are constructed or maintained by the relevant county under agreement with the appropriate BLM field office. Prior to exempting County B Roads, the BLM archaeologist and agency official will review the route for potential for adverse effects to historic properties.

21

E. Approving route-based SRPs when the following circumstances apply:
   1. Permitted activities would only occur on County B Roads (as defined above); or
   2. The agency official determines that the undertaking does not have potential to affect historic properties; or
   3. The agency official determines that there is a reasonable expectation that the proposed route-based SRP will not shift, concentrate or expand travel in conformance with Stipulation III.A.4.d of this Agreement.
F. Approving undertakings or exempting areas from survey when one of the following circumstances apply (BLM Manual 8110.23(B) and BLM-Utah Handbook 8110):
   1. "Natural conditions are such, or previous natural ground disturbance has modified the surface so extensively, that the likelihood of finding evidence of cultural resources is negligible (BLM Manual 8110.23.B.1.)."
   2. "Human activity within the last 50 years has changed the natural topography enough to eradicate cultural resources (BLM Manual 8110.23.B.2.)."
   3. "Existing survey data are sufficient to indicate that the specific environmental situation did not support human occupation or use to a degree that would make further inventory information useful or meaningful, and records documenting the location, methods, results, and reliability of the survey are at hand (BLM Manual 8110.23.B.3.)."
   4. "Conducting survey at the Class III level has previously been performed, and records documenting the location, methods, and results of the inventory are available. Such surveys must have been conducted according to current professionally acceptable standards." The BLM-Utah agency official will consult with the SHPO for surveys that are more than 10 years old (BLM Manual 8110.23.B.4.)."
   5. "Where conditions exist which could endanger the health or safety of personnel, such as the presence of hazardous materials, explosive ordnance, or unstable structures (BLM-Utah Handbook 8110.II.c.3)"

## VII.    Post-Review Discoveries

### A. Post-Review Discoveries for Area and Route Designations
In this Agreement, a post-review discovery is defined as the identification of a previously unknown cultural resource or an unanticipated adverse effect to a historic property from a previously-approved area or route designation. The agency official, in consultation with consulting parties, may develop a comprehensive plan to manage post-review discoveries and unanticipated effects as part of an HPTP or as a stand-alone document. In the event that post-review discoveries or unanticipated effects occur prior to development of a comprehensive plan, the agency official will ensure the following measures are implemented:

1. The agency official will determine if immediate measures are needed to prevent or avoid effects to potential historic properties. Immediate measures will not be needed if continued use of the area or route will not have an adverse effect to potential historic properties or if there is not an immediate threat to the resource.
2. If immediate protective and avoidance measures are not needed, and there will be no adverse effects to historic properties, the agency official will document this decision and notify Indian tribes and the SHPO by email within 96 hours. The Indian tribes and SHPO will respond by email within 96 hours of the notification.
3. If protective or avoidance measures are needed, the agency official will implement those measures to prevent adverse effects. The agency official will notify Indian tribes and the SHPO by email within 96 hours.  The agency official will also be responsible for:
    a. Determining if the site has been previously recorded and if the existing documentation contains a determination of eligibility to the National Register of Historic Places or applying the criteria at 36 CFR Part 63 and the *Secretary's Standards and Guidelines for Evaluation* to the discovery;
    b. Determining the appropriate physical protection measure(s) to prevent an adverse effect to the historic property.
    c. Notifying Indian tribes and the SHPO of the adverse effect by email, and such notification will include BLM-Utah's National Register eligibility determination, finding of adverse effect, and physical protection measures. The Indian tribes and SHPO will respond by email within 96 hours of the notification.
    d. Taking into account the recommendations by the Indian tribes and SHPO, in deciding what appropriate actions the BLM-Utah will take, and then carrying out such actions.

At any point in the discovery, the agency official may consider and implement the route closure procedures found at 43CFR8341.2.  The agency official may reopen the route following the completion of consultation efforts and if any necessary physical protection measures are implemented.

**B. Post-Review Discoveries for Route-based SRPs**
In the event that post-review discovery or unanticipated effect occurs in association with a route-based SRP, the agency official will ensure the following measures are implemented:

1. Within 48 hours of the discovery, the agency official will determine if all surface disturbing activities or those activities which the agency official determines may cause an adverse effect need to be halted or modified. If there will be no adverse effect to historic properties, the agency official will notify Indian tribes and SHPO. The Indian tribes and SHPO will respond by email within 48 hours of the notification; or

23

2. The agency official will apply the National Register eligibility criteria at 36 CFR Part 63 and the *Secretary's Standards and Guidelines for Evaluation* to the discovery;

3. If the agency official determines that there is the potential for an adverse effect, the agency official will determine an appropriate physical protection measure(s) to protect the historic property. The agency official will notify Indian tribes and the SHPO of the adverse effect by email, and such notification will include BLM-Utah's National Register eligibility determination, finding of adverse effect, and physical protection measures. The Indian tribes and SHPO will respond by email within 48 hours of the notification. The BLM-Utah will take into account the recommendations by the Indian tribes and SHPO, and then carry out the appropriate actions as practicable.

The agency official may approve route-based SRP to resume following completion of the consultation efforts with Indian Tribes and the SHPO and the implementation of the physical protection measures.

C. **Inadvertent Discovery of Human Remains** In the event of an inadvertent discovery of human remains, the agency official must be notified immediately by telephone and with written confirmation (43CFR10.4(a)). No additional disturbance may take place and all work in the area must cease immediately within a 300 foot radius of the discovery. The 300 foot radius must be secured and personnel and equipment will be excluded from this area to the extent practicable and permitted by law until a determination is made of the next action. All human remains, burial sites, and funerary objects will be treated with dignity and respect.

The agency official will notify the Sheriff's Office (Sheriff) of the county where the remains are located, requesting, if possible, the remains be examined in place. The Sheriff must determine if the remains are related to a crime scene or a recent burial. For human remains determined by the Sheriff to be related to a crime scene or recent burial, the agency official will follow the protocols determined by the appropriate law enforcement officers for resolving such findings.

For inadvertent discoveries of human remains determined by the Sheriff to not be related to a recent burial or crime scene, the BLM will be responsible for determining if the human remains are Native American. Inadvertent discoveries of human remains on federal lands determined to be Native American and any associated funerary objects will be treated in accordance with the provisions of the Native American Graves Protection and Repatriation Act of 1990 (NAGPRA) and its implementing regulations at 43 CFR Part 10.

Pursuant to 43 CFR 10.4(d), the agency official, as soon as possible, but no later than three working days after the receipt of written confirmation of notification of the

24

inadvertent human remains discovery, will:

1. Certify receipt of the notification outlined in 43 CFR 10.4(d)(1)(i);
2. Take immediate steps to further secure and protect the human remains and associated objects outlined in 43 CFR 10.4(d)(1)(ii);
3. Notify any lineal descendants or culturally affiliated Indian tribes by telephone and with written confirmation 43 CFR 10.4(d)(1)(iii);
4. Initiate consultation on the inadvertent discovery pursuant to 43 CFR 10.5 and 43 CFR 10.4(d)(1)(iv);
5. Follow the requirements and procedures outlined in 43 CFR 10.3(b) and 43 CFR 10.4(d)(1)(v) if any part of the discovery must be excavated or removed;
6. Ensure that disposition of all inadvertently discovered human remains, funerary objects, sacred objects, or objects of cultural patrimony is carried out following 43 CFR 10.5 and 43 CFR 10.4(d)(1)(vi); and
7. Re-design the relevant activity to the extent practicable and permitted by law to avoid any potential adverse effect on the discovery once it has been determined the remains are not recent and are Native American.

Pursuant to 43 CFR 10.4(d)(2), the activity that resulted in the inadvertent discovery may resume 30 days after the agency official certifies receipt of the written confirmation of notification of inadvertent discovery, if the resumption of the activity is otherwise lawful. The activity may also resume, if otherwise lawful, at any time that a written, binding Agreement is executed between the Federal agency and the affiliated Indian tribe(s) that adopt a plan for the treatment of the human remains, funerary objects, sacred objects, or objects of cultural patrimony following 43 CFR 10.3(b)(1).

The agency official will ensure that any archaeological excavation that is allowable under this Agreement through a specific HPTP will be consistent with the regulations pertaining to intentional archaeological excavations pursuant to 43 CFR 10.3. At any point in the discovery, the agency official may consider and implement the route closure procedures found at 43 CFR 8341.2.

## VIII.  Additional Efforts to Engage Consulting Parties and the Public
BLM-Utah will undertake the following activities to provide consulting parties and the public with additional opportunities to provide input and to further the protection of cultural resources that may be affected by travel and transportation management activities:

### A. Annual Coordination Meeting
In conjunction with its regularly scheduled annual meeting for BLM-Utah's *Small-Scale Undertaking Programmatic Agreement*, BLM-Utah field offices or BLM-Utah's Deputy Preservation Officer will provide consulting parties the following information:

1. Updates regarding any ongoing or upcoming opportunities to provide input into the Section 106 processes for travel and transportation management activities identified in this Agreement, including but not limited to efforts to identify historic properties, determine findings of effect, and resolve adverse effects;

2. Annual updates regarding the implementation of any ongoing phased Class II survey strategies, including the amount, type, locations of completed surveys, as well as the estimated timeframes to complete any remaining surveys that were committed to at the time a travel management plan was approved;

3. A list of any existing and/or upcoming opportunities to provide input into the resolution of adverse effects to historic properties identified through phased Class II surveys;

4. A summary of actions taken to avoid, minimize, or mitigate adverse effects to historic properties within travel management areas with approved travel management plans; and

5. Any relevant updates regarding Post-Review Discoveries identified in Stipulation VII of this Agreement.

6. A summary of any disputes, including those that pertain to Stipulations X, XI and XII that were resolved but resolved without need of involving the other signatories.

7. Public outreach associated with this Agreement.

**B. Coordination of the Section 106 and NEPA Processes**

BLM-Utah field offices will continue to seek ways to engage Indian tribes and the public in its concurrent, yet separate, Section 106 and NEPA processes for travel and transportation management undertakings identified in this Agreement. Such efforts will include, but are not limited to:

1. Including information about opportunities to participate as a consulting party in the Section 106 process printed in news releases, social media posts, and other efforts to solicit public participation in the undertaking's NEPA process;

2. Posting updates and documents relevant to the undertaking's Section 106 process on BLM-Utah's ePlanning website for the undertaking. BLM-Utah will only post cultural resource documentation that can legally be disclosed to the general public; and

3. Continued implementation of the public outreach commitments made in BLM-Utah's Small-Scale Undertaking Programmatic Agreement to notify the public of proposed undertakings that could potentially affect historic properties and are not approved according to the standard Section 106 process found at 36 CFR 800.

**C. Public Outreach and Education**

BLM-Utah will continue to prioritize the development and implementation of the following public outreach and education partnerships and initiatives that aim to reduce conflicts between cultural resources and OHVs on the public lands (subject to available

26

funding.  Nothing in this Agreement prohibits BLM from partnering with other
educational and public outreach efforts).

1. **Respect and Protect:** The "Respect and Protect" public awareness campaign focuses
   on eliminating looting and vandalism of archaeological resources on public lands in
   Utah. BLM-Utah will continue to include Respect and Protect messaging in all new
   electronic and paper products used to promote OHV recreation on public lands.
   BLM-Utah will continue to seek opportunities for partners across the state to develop
   and disseminate campaign materials;
2. **Ride on Designated Routes, Utah:** The interagency "Ride on Designated Routes,
   Utah" public awareness campaign focuses on promoting responsible OHV ethics.
   BLM-Utah will continue to disseminate these materials throughout Utah.
3. **Project Archaeology:** BLM-Utah's Project Archaeology partnership with Southern
   Utah University will continue seeking opportunities to engage kindergarten through
   twelfth grade students in local communities throughout Utah in efforts that promote
   archaeological resource education and ethics.
4. **Site Stewardship Program:** BLM-Utah will continue supporting its statewide site
   stewardship partnership with the Friends of Cedar Mesa, as well as all local site
   stewardship program partnerships developed with individual BLM-Utah field offices.
   BLM-Utah's site stewardship program focuses on training interested volunteers to
   monitor at-risk cultural resource sites.  BLM-Utah will also seek to increase the
   number of field offices sponsoring site stewardship programs and the number of
   volunteers and partnership organizations in each program (e.g., historic trail
   associations and local chapters, heritage tourism stakeholders, local historic societies,
   OHV user groups, etc.).

IX. **Standards for Releasing Sensitive Information**
All consulting parties will ensure that all sensitive information, as defined in Section 9 of the
*Archaeological Resources Protection Act* (ARPA) of 1979 and Section 304 of the NHPA,
and excluded from public release under the *Freedom of Information Act* (5 U.S.C. 552) that
may be intentionally or unintentionally provided as part of the consultation process is
protected from public release. Information concerning the nature and location of any
archaeological resource (historic or prehistoric) will be considered for public release to
consulting parties in a limited and controlled manner under the provisions of Section 9 of
ARPA.

X. **Dispute Resolution Procedures for the Implementation of this Agreement**
Should any signatory or consulting party object to implementation of this Agreement, it will
provide written notice to the State Director of its objection with supporting justification. The
State Director, or an appropriate designee, will determine if the objection should be
considered prior to contacting the other signatories. If the State Director, or designee,
determines that the request should be considered, the State Director, or designee, will consult
with the objecting party and the signatories to resolve the dispute. If after consulting with the

27

objecting party and other signatories to resolve the dispute, the State Director, or designee, acting as the responsible agency official for this Agreement, determines that the objection cannot be resolved within 30 calendar days, the State Director, or designee, will forward all documentation relevant to the dispute to the ACHP and proceed in accordance with that decision.

Within 45-calendar days after receipt of all pertinent documentation, the ACHP will provide the State Director with its recommendations to resolve the dispute. After receiving these recommendations, the State Director, or designee will make a final decision on the dispute within 30-calendar days. BLM will proceed with that decision and notify the other signatories and consulting parties in writing of the State Director's decision.

**XI.    Dispute Resolution Procedures for Undertakings**

Should any signatory or consulting party to an undertaking under this Agreement object to how an undertaking is proceeding under the direction of this Agreement, it will provide written notice to the agency official of its objection with supporting justification. The agency official will determine if the objection should be considered prior to contacting the other signatories. If the agency official determines that the request should be considered, the official, or its designee, will consult with the objecting party and the signatories to resolve the dispute. If after consulting with the objecting party and other signatories to resolve the dispute, the agency official, determines that the objection cannot be resolved within 30 calendar days, the agency official will forward all documentation relevant to the dispute to the ACHP and proceed in accordance with that decision. If the ACHP declines to participate in the resolution process, the agency official will proceed with that decision.

Within 30-calendar days after receipt of all pertinent documentation, the ACHP will provide the agency official with its recommendations to resolve the dispute. After receiving these recommendations, the agency official will make a final decision on the dispute within 15-calendar days. BLM will proceed with that decision and notify the other signatories and consulting parties in writing.

**XII.    Disagreement with Finding of No Adverse Effect**

If within the 30-day review period, the SHPO or any consulting party identified by the agency official notifies the agency official in writing that it disagrees with a finding of "No Adverse Effect" and specifies the reasons for the disagreement in the notification, the agency official will consult with the party through e-mail, telephone, or meeting to resolve the disagreement. The agency official will also concurrently notify all identified consulting parties that such a disagreement was submitted to the agency official. If the agency official's initial finding will be revised, the agency official will proceed in accordance with the revised finding. If the final decision of the agency official is to affirm the initial finding of no adverse effect, a summary of the decision will be sent to the consulting parties. Once the consulting parties have been notified, the agency official's responsibilities under this Agreement are fulfilled.

Although not required under this Agreement, the agency official may also seek input on the finding of effect from the ACHP. If the agency official determines to seek ACHP participation, the agency official will submit with such request the documentation specified in 36 CFR 800.11(e).

The ACHP will review the finding and provide the agency official and with its opinion as to whether the adverse effect criteria have been correctly applied. The ACHP will provide its opinion within 15 days of receiving the documented finding from the agency official. The ACHP at its discretion may extend that time period for 15 days, in which case it will notify the agency of such extension prior to the end of the initial 15 day period. If the ACHP does not respond within the applicable time period, the agency official's responsibilities under the Agreement are fulfilled.

The agency official will take into account the ACHP's opinion in reaching a final decision on the finding. The agency official will prepare a summary of the decision that contains the rationale for the decision and evidence of consideration of the ACHP's opinion, and provide it to the ACHP, the SHPO, and the consulting parties. The agency official may use e-mail to convey this notification.

If the agency official's initial finding will be revised, the agency official will proceed in accordance with the revised finding. If the final decision of the agency official is to affirm the initial finding of no adverse effect, once the summary of the decision has been sent to the ACHP, the SHPO, and the consulting parties, the agency official's responsibilities under this Agreement are fulfilled.

## XIII. Amendments to the Agreement

Any signatory or concurring party may request that the Agreement be amended by informing the State Director in writing of the reason for the request and the proposed amendment language. The State Director will determine if the request and the proposed amendment language should be considered prior to contacting the other signatories and concurring parties. If the State Director determines that the request should be considered, the State Director willwill notify all signatories and concurring parties of the proposed amendment. The signatories will consult to reach agreement within 30-calendar days, unless the signatories agree to a longer period of consultation and/or the party of the proposed amendment retracts its proposal. During this time, the State Director will determine if a meeting with signatories and consulting concurring parties is needed. The amendment will be effective on the signature date of the last signatory to sign the amended agreement. All consulting parties will be notified of the amendment and will be given an opportunity to sign the amended agreement.

XIV.  **Termination of the Agreement**

Any signatory may terminate this Agreement by providing a concurrent 90-calendar day notice to the other signatories, provided that during this period the signatories attempt in good faith to find a collaborative resolution that would avoid terminating this Agreement. The State Director will determine if a meeting with signatories and concurring parties is needed to discuss the potential termination of this Agreement. The BLM-Utah Deputy Preservation Officer may request the assistance of the BLM Preservation Board in this dispute resolution process. If the Agreement is terminated, BLM-Utah will comply with Section 106 of the NHPA by following the implementing regulations at 36 CFR Part 800. The BLM will notify all signatories and consulting parties that this Agreement has been terminated.

XV.  **Agreement Duration**

This Agreement will be in effect for 10 years unless terminated under Stipulation XIV. This 10-year time period begins when all of the signatories have signed this Agreement. After nine years, the signatories will consult to extend, amend or terminate this Agreement.

XVI.  **Anti-Deficiency Act**

BLM's obligations under this Agreement are subject to the availability of appropriated funds, and the stipulations of this Agreement are subject to the provisions of the Anti-Deficiency Act. BLM will make reasonable and good faith efforts to secure the necessary funds to implement this Agreement in its entirety.

**EXECUTION** of this Agreement by BLM-Utah, the SHPO, and the ACHP, and implementation of its terms, conditions, and stipulations evidence that BLM-Utah has taken into account the effects of travel management and route-based SRP undertakings on historic properties and afforded the ACHP an opportunity to comment.

**Signatories**

_Edwin L Roberson_ 　　　　　　　　　　　9-18-18

_____ 　　　　_____
Edwin L. Roberson 　　　　　　　　　　　　　　　　　Date
State Director
Bureau of Land Management-Utah


_Christopher W. Merritt_ 　　　　　　　　　　9/18/18

_____ 　　　　_____
Donald Hartley 　　　　　　　　　　　　　　　　　　Date
State Historic Preservation Officer
Utah State Historic Preservation Office


_John M. Fowler_ 　　　　　　　　　　　　　11/28/18

_____ 　　　　_____
John M. Fowler 　　　　　　　　　　　　　　　　　Date
Executive Director
Advisory Council on Historic Preservation


31

**Concurring Parties**

**Appendix 1**
**Process Flow Charts**





Open OHV Areas
Stipulation VI
Exemptions to the Agreement
Review Agreement Exemptions
Undertaking is not Exempt
Undertaking is Exempt
Section 106 Complete
Stipulation III
Identification Efforts
Identify APE
Consultation*
Identify Scope of Identification Efforts
* Stipulation III.A.1(a): "During the public scoping phase of the RMP or RMP amendment, the agency official will invite and seek consulting party input into the undertaking's Section 106 process, including whether to modify the APE for proposed open and limited OHV area designations to account for potential direct, indirect, and/or cumulative effects. After considering all consulting party input, the agency official will make the final determination of the APE for the undertaking in consultation with the SHPO."
Complete and/or Update a Literature Review and Cultural Resource Potential Map
Review Previously Recorded Cultural Resources
Previous Survey
High/Medium/Low Potential Areas
Consultation
Site Revisits
Finalize Literature Review and Potential Map
SHPO Consultation
Determine Extent of New Survey
Area Exempt or Acceptable Previous Class III
High Potential Areas
Medium and Low Potential Areas
Consultation
No Survey Necessary
Class III Survey
Possible Class II or Class III Survey
Reasonable and Good Faith Identification Effort
SHPO Consultation
Stipulation IV
Findings of Effect
Results of Identification and Evaluation
No Historic Properties Affected
Consultation
Case-by-case basis
Submitted to SHPO under Small-Scale PA
Section 106 Complete
Historic Properties Affected
Adverse Effects
No Adverse Effects
Consultation
SHPO Consultation
Section 106 Complete
Stipulation V
Resolution of Adverse Effects
Develop Historic Property Treatment Plan
Consultation
SHPO Consultation
Section 106 Complete

OHV Route Designation: Pre-Designation Process

## Post-Review Discoveries for Area and Route Designations

**Stipulation VII.A.**

**Post-Review Discoveries\***

\* Stipulation VII.A: "...is defined as the discovery of a previously unknown cultural resource or an unanticipated adverse effect to a historic property from a previously approved undertaking."

Apply National Register Criteria at 36CFR63 and the *Secretary of the Interior's Standards and Guidelines for Evaluation* to the discovery.

**Determination if Immediate Measures are Needed**

\*\*If there is not a threat to the resource than the process is complete. If there is a threat but it is not an immediate threat, the process will proceed without the 96-hour timelines.

*Immediate Measures Needed – Potential Adverse Effects*

*No Immediate Measures Needed\*\* – No Adverse Effects*

BLM shall determine appropriate physical protection measures.

BLM shall notify Indian tribes and SHPO within 96 Hours. Indian tribes and SHPO have 96 hours to respond.

**Process Complete**

BLM shall notify Indian tribes and SHPO of the determination of effect and protection measures. Indian tribes and SHPO have 48 hours to respond.

BLM take into account recommendations from Indian tribes and SHPO and carry out the appropriate actions as practicable.

**Process Complete**

BLM may approve resuming the previously affecting activity.

All Post-Review Discoveries Will Be Discussed at the Annual Meeting with Consulting Parties.





Route-Based SRPs
Stipulation VI Exemptions to this Agreement
Review Agreement Exemptions
Undertaking is not Exempt
Undertaking is Exempt
Section 106 Complete
Stipulation III: Identification Efforts
Identify APE
Consultation*
* Stipulation III.A.1(c): "BLM-Utah agency officials will determine whether inviting and seeking consulting party input in to these undertakings' Section 106 processes, including the identification of an APE, is necessary in accordance with the route-based SRP identification standards included in Stipulations III.A.4(d). In consultation with SHPO, the agency official will make the final determination of the APE for the undertaking."
Identify Scope of Identification Efforts
Determine Areas that Fall within the Exemptions of this Agreement, as defined in Stipulation VI, including Acceptable Previous Class III
Determine Areas with Reasonable Expectation that SRP Activity will Shift, Concentration, or Expand Travel within the APE
Determine Extent of New Survey
Area Exempt
Shift/Concentrate/ Expand Use to Such an Extent that Adverse Effects May Occur
No Survey
Class III Survey
Stipulation IV Findings of Effect
Results of Identification and Evaluation
No Historic Properties Affected
Consultation*
Project Submitted to SHPO under Small-Scale PA
Section 106 Complete
Historic Properties Affected
Adverse Effects
No Adverse Effects
Consultation
SHPO Consultation
Section 106 Complete
Stipulation V: Resolution of Adverse Effects through Historic Property Treatment Plans
Resolution of Adverse Effects
Develop Historic Property Treatment Plan
Consultation
SHPO Consultation
Section 106 Complete

## Post Review Discoveries For Route-based SRPs

**Stipulation VII.B.**

Apply National Register Criteria at 36CFR63 and the *Secretary of the Interior's Standards and Guidelines for Evaluation* to the discovery.

\* Stipulation VII.A: "...is defined as the discovery of a previously unknown cultural resource or an unanticipated adverse effect to a historic property from a previously approved undertaking."

**Determination of Effect**

*Adverse Effects*

*No Adverse Effects*

BLM shall halt affecting activity, as determined necessary.

BLM shall notify Indian tribes and SHPO of the determination of effect. Indian tribes and SHPO have 96 hours to respond.

**Process Complete**

BLM shall determine appropriate physical protection measures.

BLM shall notify Indian tribes and SHPO of the determination of effect and protection measures. Indian tribes and SHPO have 48 hours to respond.

BLM take into account recommendations from Indian tribes and SHPO and carry out the appropriate actions as practicable.

**Process Complete**

BLM may approve resuming the previously affecting activity.

All Post-Review Discoveries Will Be Discussed at the Annual Meeting with Consulting Parties.

**Appendix 2**
**Phased Class II Survey Strategy Outline**

**UNITED STATES DEPARTMENT OF THE INTERIOR**
**BUREAU OF LAND MANAGEMENT**

**Identification Strategy for Phased Class II Surveys for**
**The XXXX Travel Management Area**

## PROJECT NUMBER:

1. Report Date:

2. Date(s) of Survey:

3. Permitee(s):

4. Principal Investigator:

5. BLM Field Office:

6. County(ies):

7. NEPA Number:

8. Description of Travel Management Area:

9. Need for Additional Survey in Areas of Medium Cultural Resource Potential:

10. Need for Additional Survey in Areas of Low Cultural Resource Potential (including a discussion of OHV concentration):

11. Those Routes Identified by Consulting Parties (including Tribes) and Agreed by the Agency Official as Maintaining a Cultural Resource and OHV Conflict:

| Route Number | Identified OHV Conflict (include site numbers if known) | Proposed Survey Methods |
|---|---|---|
| | | |
| | | |

12. Number of Miles to be Surveyed in Areas of Medium and Low Cultural Resource Potential:

| | Medium | Low |
|---|---|---|
| Miles | | |
| | | Total |

13. Management Summary (including timeframes):